73084. HOWELL et al. v. THE STATE.
(350 SE2d 473)

BIRDSONG, Presiding Judge.

The defendants, John and Patricia Howell, husband and wife, were jointly indicted by the Barrow County grand jury on five counts of cruelty to their children, Stanley (age 1-½ years) and Alan (age 6 months). In Counts 1 and 2, the parents were charged with causing Stanley excessive physical pain by striking him in the face. The mother was acquitted of both counts and the father was convicted on both counts. Count 3 resulted in an acquittal for both parents. Count 4 alleged both parents deprived Stanley of necessary sustenance by failing to take him to a physician to treat him for injuries. Count 5 alleged the parents failed to provide Alan with necessary sustenance on April 4, 1985, "by failing to provide said child with nourishment prescribed by a medical doctor to the extent that the child's health was jeopardized. . . ." Both parties were convicted of Counts 4 and 5.

Witnesses described the many injuries suffered by Stanley when he was observed at the day care center, and seen by the caseworker from the Barrow County Department of Family & Children Services (DFCS). A doctor who examined Stanley because of some of these injuries concluded that such injuries did not result from a fall, as claimed by the father, nor from one incident. The father testified that Stanley was hyperactive and incurred the injuries from various falls, except for one time when the ceiling in their home fell and injured him.

The defendant, Patricia Howell, apparently was a small woman. She said that she weighed 80 pounds at the time of trial. Alan had weighed 8 pounds, 2 ounces at birth but failed to gain weight thereaf-

ter. At the age of 2-½ months, he weighed 8 pounds, 10 ounces. He was seen by Dr. Kwon, a pediatrician, who diagnosed his condition as "failure to thrive," best described as a failure to gain weight normally. Dr. Kwon placed Alan in the hospital and conducted extensive tests but could find no medical reason for his failure to thrive. Alan was referred to a specialist in Atlanta, Dr. Anderson, who advised Dr. Kwon that Alan had a "high metabolism," and that children used up more calories when they have a high metabolic rate which "means that it doesn't go to the weight gaining." Dr. Anderson recommended a 24-calorie per ounce formula of milk for Alan. Regular formula milk has 20 calories per ounce. Dr. Kwon found that Alan suffered from a "high arched palate," a "minimal cleft palate," and a "very small cracking in the softer palate," but was of the opinion that this would not interfere with his ability to suck on a milk bottle. Dr. Anderson told Dr. Kwon that "clinical pictures, it looks like hyperthyroidism, but tests turn out to be normal." The prosecutor asked Dr. Kwon if Alan's problems "have been caused by Alan simply not getting enough to eat at home." The doctor testified "that's a possibility, but, you know, possibility; doesn't say 100 percent he's not getting enough nutrition." Defendants' counsel asked the pediatrician: "But from your tests and your observations, you can't say whether they didn't get adequate food or not? A. No. I don't think I can say that. . . . Whether he's getting adequate nutrition at home, I cannot say." However, the doctor was of the opinion that the cause for a child's failure to thrive can be the parents' failure to provide proper nutrition. Further, if there was insufficient nutrition it could cause the child to have psychomotor retardation, and Alan had psychomotor retardation, i.e., he could not sit up at the age of 8 months.

The Howells appeal their conviction. *Held*:

1. As to Counts 1 and 2, there is sufficient probative evidence to enable any rational trier of fact to find the existence of those offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. Defendants contend the trial court erred in refusing to charge their request that simple battery was a viable lesser included offense as to Counts 1 and 2. "Where the uncontradicted evidence shows completion of the greater offense [in this instance, cruelty to a child], the charge on the lesser offense is not required. *Jordan v. State*, 239 Ga. 526 (2) (238 SE2d 69). *Marable v. State*, 154 Ga. App. 115 (2) (267 SE2d 837)." *Lemon v. State*, 161 Ga. App. 692 (3) (289 SE2d 789). The evidence of record shows with convincing clarity the injuries inflicted upon defendants' child and the concomitant excessive physical pain from such injuries. *Owens v. State*, 173 Ga. App. 309 (2) (326 SE2d 509); *Fain v. State*, 165 Ga. App. 188 (1) (300 SE2d 197); *Polk v. State*, 142 Ga. App. 785, 786 (236 SE2d 926). This enumera-

tion is without merit.

3. Count 4 alleges both parents failed to provide necessary medical care to their son Stanley on April 4, 1985. On that date, Nina Davis, a caseworker from the Barrow County DFCS, visited the Howells' home because Stanley had been absent from the Child Development Center for several days. Ms. Davis had difficulty in being admitted to the defendant's home, and then being permitted to see Stanley. She persisted and finally Stanley was brought into the room. He had two black eyes, one cheek had bruises and abrasions, there was one bruise on his forehead, his lip had split open and there was scabbing inside the top lip, there was scabbing in one ear, and he had a bruise on his rib cage and on his hip. The parents said Stanley had fallen from a dresser and struck his face on one of the drawers. Ms. Davis told the Howells that Stanley should see a doctor and since they had an appointment with Dr. Kwon the following morning they should take Stanley with them. After Ms. Davis returned to her office, she changed her mind and made an appointment with a local doctor, Dr. House, for 3:50 p.m. that afternoon. She returned to the Howells' home but they were not there. She left a note on the door advising them of the doctor's appointment that afternoon. Mr. Howell testified that they had gone to Monroe and Athens that afternoon on a problem with the title to his car, and did not return home until 5:00 or 6:00 p.m. The time for the doctor's appointment had passed. The Howells kept their appointment with Dr. Kwon on April 5th, but there was no testimony as to whether they took Stanley.

Under our Code, cruelty to children may be committed by either of two methods: (1) by wilfully depriving a child of necessary sustenance to the extent that the child's health or well-being is jeopardized, or (2) by maliciously causing the child cruel or excessive physical or mental pain. OCGA § 16-5-70. Count 4 charges defendants with cruelty to Stanley Howell, a child under 18 years of age, by "wilfully depriv[ing] said child of necessary sustenance, to wit: by failing to take said child to a physician [on the 4th day of April, 1985] to treat said child's injuries to the extent that the child's health was jeopardized. . . ." It appears that the State has confused the two methods of committing cruelty to a child by charging a denial of necessary sustenance, when in fact the child was caused cruel and excessive pain by failing to take the child for necessary medical treatment.

"Necessary sustenance" has been defined by our Supreme Court as " 'that which supports life; food; victuals; provisions'. . . . Our statute, in the use of the word "sustenance," means that necessary food and drink which is sufficient to support life and maintain health." *Caby v. State*, 249 Ga. 32, 33 (1) (287 SE2d 200). The denial of necessary and appropriate medical care for a child under 18 years of age can constitute cruelty to a child when it causes the child "cruel

or excessive physical or mental pain," under OCGA § 16-5-70 (b) but it does not constitute a denial of "sustenance." Denial of sustenance is the offense described in and proscribed in § 16-5-70 (a). "[T]he State was obliged to prove its case under the . . . theory set out in the indictment." *Cutter v. State*, 168 Ga. App. 651 (310 SE2d 16).

In *Justice v. State*, 116 Ga. 605 (42 SE 1013), the court was faced with an incident in which a parent had deprived a child of medicine because of religious beliefs, when the child was sick. The parent was charged with "unlawfully depriv[ing the child] of necessary sustenance." The Supreme Court found that "[e]vidence that a father refused to permit medicine to be administered to one of his minor children while sick does not support a conviction of the father for depriving such child of necessary sustenance, within the meaning of the statute. . . ." Id. Hence, in that instance, denial of appropriate medical care for a sick child was not found to be included within the term "necessary sustenance." The court went on to define "sustenance, means that necessary food and drink which is sufficient to support life and maintain health." Id. at 606.

We find *Justice*, supra, to be controlling, and that *Brewer v. State*, 156 Ga. App. 468 (274 SE2d 817) does not mandate a different result. In *Brewer*, the defendant was charged with depriving a child of necessary sustenance by a failure to provide "proper medical attention and sufficient food." This court pretermitted the issue of "proper medical attention" as interpreted by *Justice*, supra, and decided the question on the lack of "sufficient food" as the child died as a result of "severe malnourishment." Id. at 469. The trial court erred in failing to grant defendants' motion for a directed verdict of acquittal as to Count 4.

4. Defendants enumerate as error the refusal of the trial court to direct a verdict of acquittal as to Count 5 which alleged that on one day, April 4, 1985, the defendants denied Alan Howell "necessary sustenance . . . by failing to provide said child with nourishment as prescribed by a medical doctor to the extent that the child's health was jeopardized. . . ." In essence, because of the child's failure to gain weight properly, Dr. Kwon prescribed a special formula containing 24 calories per ounce for Alan. No exact date was established for issuance of the prescription, but there is testimony that it followed the receipt by Dr. Kwon of a letter from Dr. Anderson, recommending the 24-calorie milk, on or about November 6, 1984. The father testified that he was unable to find any pharmacy which stocked the formula. The Barrow County Health Department finally obtained the formula from a milk company and began issuing it to the Howells on February 14, 1985. The Howells received a two-week supply each time, and the health department said they made three pickups, which would have been sufficient to feed Alan through March. The child was taken from

the Howells on April 4th. Thus, the child could have been without the special formula on four days, but could have been fed the regular formula issued by the health department to the Howells. However, Mr. Howell testified there was one time the health department did not have the formula and they had "two cases of . . . Similac with iron we had to give him until the health department got us a case" of the special formula. "Sometimes that was a week, and we ؛ ad to give him this Similac in between the [special formula] cases, because the health department said they couldn't furnish it because it was too expensive and that we didn't have a grant from the government to supply this milk. And the reason that Alan was supposed to have went [sic] to see Dr. Kwon was to get him off of this milk. . . . They told me to get — make an appointment, which I didn't do. Somebody else made it for me — to have his milk changed back on his regular Similac because they couldn't supply it and I didn't have a grant that would pay for this milk. We had a few bottles — I don't know how many — when they picked up my kids."

The health department nurse admitted that the special formula milk was "very expensive . . . the health department itself does not take the formula. It comes to a milk company. They provide . . . free samples for children that need milk, and I think they were providing this. Q. And you think they were provided two-hundred-dollar-a-case free samples? Was it an ongoing basis? A. Yes." The nurse also was asked whether the Howells had an appointment with Dr. Kwon on March 15, 1985, "about changing the formula." The nurse knew about the appointment but "didn't know it was because the formula had been changed." Mrs. Howell advised the nurse that Dr. Kwon had changed the formula and wanted the old formula restarted. The nurse said when Alan's foster parents came in to get the special formula a telephone call to Dr. Kwon revealed "he had not wanted it changed." This is hearsay if such testimony is offered to prove the truth of the statement that Dr. Kwon had not changed the formula. Counsel never asked Dr. Kwon or the Howells whether the prescription had been changed. However, this was a condition shown to exist, e.g., a special formula milk was issued to Alan Howell, and there is a legal presumption of continuance of such condition until a change in such status is shown. *Sears, Roebuck & Co. v. Wilson*, 215 Ga. 746, 753 (113 SE2d 611); Green, Ga. Law of Evid. (2d ed.) § 27; Agnor's Ga. Evid. (2d ed.) § 17-12.

"A defendant cannot be tried on a charge that is not made in the indictment against him." *Hack v. State*, 168 Ga. App. 927, 928 (311 SE2d 211). "The state elected to charge and prove [defendants wilfully deprived Alan Howell of necessary sustenance on April 4, 1985, by failing to provide said child with nourishment prescribed by a medical doctor to the extent that the child's health was jeopard-

ized. . . .] The state thus was bound by its election. To expose [defendants] to conviction of another form of [child cruelty] than that alleged would be to countenance a material variance between the allegata and the probata, a result that has been prohibited and condemned by this state." *Griffin v. State*, 168 Ga. App. 696, 699 (310 SE2d 278). Thus, "the state was obliged to prove its case under the . . . theory set out in the indictment." *Cutter*, supra at 651. The State did not prove that the child was denied sustenance on April 4, 1985, or on any other specific date. Nor is there any evidence that even if the defendants did not administer the special 24-calorie formula to their child, that they failed to give it the 20-calorie formula. There was evidence that the Howells still possessed some of the 24-calorie formula on the date that the court ordered the child taken from their possession. There is a total failure of proof as to the denial of the special formula to the defendants' child on any specific date.

However, the foregoing is only one reason for concern. There is evidence in the record that the special formula milk cost from $100 to $200 per case and that the father was unable to find it at any pharmacy, even if he could have afforded to purchase it. The sole source of the Howell family's income was assistance to the poor from welfare and Social Security. We must conclude no crime was committed when the local health department failed to provide the special formula from the date it was prescribed (November, 1984?) until February 14, when the first case was delivered to the defendants, and during the periods testified to by Mr. Howell between the date that the issued formula was exhausted until a new case could be issued — at one time a period of two weeks. During that time, the defendants apparently received a special Similac with iron formula and administered the 20-calorie formula to their child. Yet, the State charges that on one specific date when the defendants failed to feed the 24-calorie formula to their child, but used a 20-calorie formula, this was a criminal offense.

However, the critical issue that concerns us is the fact that the State has chosen to charge that a denial of one day's special formula was sufficient to "jeopardize" the child's health. Assuming there was a denial of the special formula for one day, with the attendant use of 20-calorie formula, the denial of caloric intake could amount to as much as 50 to 100 calories. There is no testimony that there was such a denial, and no evidence that the child was denied any milk at any time nor the effect on nourishment of denial of 100 calories for one day. There was a failure by the State's expert witness to state that the child's failure to thrive was caused by a lack of nutrition, and that the child's health had been jeopardized by defendants' failure to utilize the prescribed special formula.

The trial court erred by denying defendants' motion for a di-

rected verdict of acquittal as to Count 5.

Judgment affirmed in part and reversed in part. Banke, C. J., and Sognier, J., concur.

DECIDED OCTOBER 20, 1986 —
REHEARING DISMISSED NOVEMBER 5, 1986.

William Rhymer, for appellants.
Timothy G. Madison, District Attorney, for appellee.