## A89A0059. LEWIS v. THE STATE.
(381 SE2d 558)

McMurray, Presiding Judge.

Defendants, husband and wife, were indicted for cruelty to children. At trial, the evidence revealed the following:

During the morning of February 9, 1986, defendants' neighbor, Mrs. Robin Smith, heard defendants' 32-day-old infant crying. Mrs. Smith went to church that morning and when she returned, "the baby was still crying." Mrs. Smith contacted defendant wife via telephone and inquired, " 'How's the baby's leg?' " Defendant wife inquired of Mrs. Smith as to how she knew about it. Mrs. Smith informed defendant wife that her "daughter's girlfriend told [her] about it. . . ." Mrs. Smith then offered assistance to defendant wife. The child's mother did not reply and Mrs. Smith rushed to defendants' apartment. There she found defendant husband talking on the phone. The infant was in the bedroom crying. Mrs. Smith examined the baby and "noticed on the left leg, up . . . in the calf, it was swollen and tight. [She] rubbed [her] finger across and . . . could feel the bone." Immediately, Mrs. Smith informed defendant wife that the child's leg appeared to be broken and that "the baby needed to go to the hospital." At that time, defendant husband was "arguing" with his wife. Consequently, Mrs. Smith "wrapped the baby up, got into [her] car . . ." with defendants and took the child to the hospital.

Dr. Daniel Joseph Duvall, a pediatric emergency room physician, examined the infant and observed that the child's "lower leg on the left side was markedly swollen and very hard." Dr. Daniel ordered an X-ray examination of the child's left leg and he discovered that "the major bone of the lower leg, which is the tibia, [had] a break going right through the middle of it. [It was] a sharp break right across." Dr. Daniel determined that the bone had been broken for about "ten days."

Dr. James Edward Hulse III, another physician familiar with pediatric care, ordered a more thorough X-ray examination and it was discovered by Dr. Huey Bullock, a "diagnostic radiologist," that the child suffered "two definite fractures and [a] deformity of the lower leg, which [looked] like [a] healed fracture deformity," more specifically, there was discovered on "the left lower leg . . . a recent fracture, probably two, two plus, maybe three weeks old." There was "a healing fracture of the upper right leg that [was] probably three weeks old [and the] healed fracture deformity of the right lower leg [was] probably about a month old."

Defendant and defendant's wife told Dr. Duvall that they had been aware of the child's condition for "one to two days before [the doctor] saw him." (However, defendant wife testified that she informed defendant husband of the child's injuries "five to six days before the baby was taken to the doctor [by Mrs. Smith]".) From this and other evidence adduced at trial both defendants were found guilty of cruelty to children. Defendant husband now appeals and we are concerned with his appeal only. *Held:*

1. In his first enumeration of error, defendant challenges the sufficiency of the evidence.

"Under our Code, cruelty to children may be committed by either of two methods: (1) by wilfully depriving a child of necessary sustenance to the extent that the child's health or well-being is jeopardized, or (2) by maliciously causing the child cruel or excessive physical or mental pain. OCGA § 16-5-70." *Howell v. State*, 180 Ga. App. 749, 751 (3) (350 SE2d 473). In the case sub judice, there was sufficient evidence to enable any rational trier of fact to find defendant was guilty, beyond a reasonable doubt, of the offense of cruelty to children (causing his 32-day-old child excessive physical pain by maliciously failing to seek medical attention for the child's sensitive and swollen left leg). *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). In this regard, the father admitted that he was aware of the swelling in the child's left leg "about a day or two" before Mrs. Smith took the baby to the hospital. Most persuasively, however, was defendant wife's testimony that defendant did not respond when she mentioned the child's swollen leg to him and "I guess [defendant's] mind was on other things."

2. Next, defendant contends the trial court erred in charging the jury on the entire Code section which defines the offense of cruelty to children. Defendant argues that this instruction confused and misled the jury. This argument is without merit.

" 'It is not usually cause for new trial that an entire Code section is given. *Ford v. State*, 232 Ga. 511, 517 (12) (207 SE2d 494) (1944). Accord *Highland v. State*, 127 Ga. App. 518 (1) (194 SE2d 332) (1972). This is so even though a part of the charge may be inapplicable under the facts in evidence. *Highland*, supra at p. 519. *Rowles v. State*, 143 Ga. App. 553, 557 (239 SE2d 164) (1977), cert. den. Accord *Pippin v. State*, 205 Ga. 316 (9), 323 (53 SE2d 482) (1949).' *Keller v. State*, 245 Ga. 522 (1) (265 SE2d 813) (1980)." *Brooks v. State*, 250 Ga. 739, 741 (2) (300 SE2d 810).

*Judgment affirmed. Carley, C. J., concurs. Beasley, J., concurs in the judgment only.*

DECIDED APRIL 10, 1989.

*D. Duston Tapley, Jr.,* for appellant.
*Sam B. Sibley, Jr., District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellee.