## A90A1293. RIGENSTRUP v. THE STATE.

(398 SE2d 25)

BIRDSONG, Judge.

Appellant, Robert Henry Rigenstrup, was indicted on two counts of cruelty to children. The alleged victim (hereinafter "B") is the daughter of the woman with whom appellant was living, Renee Pence. Count one averred that appellant "unlawfully maliciously" caused B "cruel and excessive physical and mental pain by striking said child on the buttocks, about the head and about the body." Count two averred that appellant "unlawfully maliciously" caused B "cruel and excessive physical and mental pain by omission in failing to seek medical attention" for certain fractures the child had sustained. Appellant was convicted of both counts and appeals from the judgment of conviction, verdict, and sentence.

On April 30, 1988, B, who was then about fourteen months old, was admitted to the Scottish Rite Children's Hospital following an apparent accidental near-drowning in the bathtub at her home. The treating physician observed multiple bruises in various stages of healing on B's body, and appropriate investigation commenced. Bone scan and x-rays revealed that B had a fracture of the collarbone, fracture of at least one rib, and compression fractures of at least two and possibly three vertebrae. The bruises on B's body included a bruise on her cheek, and bruises on her lower buttocks in an area not normally exposed to bruising.

The State introduced certain medical experts who testified inter alia regarding the nature of B's injuries. Dr. Brown testified without objection that her finding and discharge diagnosis was probable child abuse, and that B's compression fractures could be caused by being slammed onto a potty seat. Dr. Burton testified without objection that from the constellation of injuries present, together with certain information contained within appellant's statement, he had concluded B's injuries were consistent with having been received from the "childhood maltreatment syndrome."

Ms. Pattillo from the Floyd County Department of Family & Children Services testified inter alia about certain admissions made to her by appellant. Appellant told her that he had told a psychologist "that he was afraid of hurting" B. Appellant denied hurting B, but admitted he had spanked her when she was eleven months old for throwing toys. Appellant attributed B's collarbone injury to a fall from her bed; as to the bruises, appellant admitted that he had spanked the child on the buttocks on occasion and had on a couple of occasions left bruises.

Detective Wade testified inter alia that appellant admitted he had probably caused the bruises on B's behind by giving her a "smack" on the behind when she wet her pants. Appellant also admit-

ted that at first he would put B down on the potty easy, but when she did wet her pants he "would put her down a little harder so she understands." Regarding the collarbone accident, appellant admitted that certain of his friends had seen B's collarbone and advised him to take her to the hospital if it got worse.

The mother of B, Renee Pence, in essence testified that appellant loved the baby and would not intentionally harm her. The baby's collarbone was injured when she accidentally fell from the playpen; a pediatrician, Dr. Cuba, was called and he said to ice pack the swollen area, move the arm to see if it hurts, and if the swelling goes down not to worry. She further testified that she has been reminded by her mother that the compression fractures could have occurred in an earlier accident when a stroller collapsed and she fell pushing it onto the baby. Ms. Pence denied ever seeing appellant slam B on the potty, but did observe that "[w]henever [B] would potty in her pants, [appellant] might place her a little harder . . . not enough to hurt her." When she asked appellant "why so rough," he replied that "he was a little upset whenever she'd potty in her pants. . . ." Ms. Pence saw appellant on occasion spank B on the bottom with his hand, because of a potty training accident or because the baby was doing something she had already been told not to do. Ms. Pence believed that appellant was spanking a fourteen-month-old baby because that was how he was raised, and he thought that was how you were supposed to do things. Appellant did not listen to her when she told him that was not the way to discipline the child.

Dr. Cuba testified that he had never received a phone call pertaining to B and a broken or swollen collarbone, or of any injury to her arm; and, that he would have advised anyone making such a call to take the baby to his office or to an emergency room.

Appellant testified in essence that he was abused as a child, he did not know that he was incorrectly disciplining B, and that he loved her and would not intentionally harm her, either physically or mentally. He admitted in open court that he had started spanking B for potty training accidents after the first several times, that a friend, Troy, told him it was no way to treat children, and that he "[u]sed to set [B] on the toilet a little harder than what I would if she had to go potty and told us about it." He further testified that he had told someone he had left bruises on the child when he spanked her, but meant only that he had once left red finger marks. Although appellant had witnessed the stroller accident, he did not take B to the hospital, as Beverly Pence (Renee's mother, who gave certain corroborating testimony in appellant's behalf) did not believe it was serious enough. He also testified that he had once told a psychologist that if B grabbed something off the table, he would "smack" her, and that he did not know if this was right or wrong; and, that he had told the

detective that he "smacked" B when she had a potty-training accident, but did not "smack" her when he set her down on the toilet harder. Although he understood that Dr. Cuba was called after B's collarbone accident, he did not call him. Appellant testified that since taking parenting classes he now believes that he "did wrong mentally with [B] by spanking her," but he was unaware of this at the time it occurred. *Held*:

1. Appellant asserts that the trial court erred by admitting in evidence a taped interview of appellant without deleting a portion thereof, which put his character in issue. Specifically, during the course of Detective Wade's interview, appellant volunteered an intended self-serving statement, which was not in response to the question asked of him, and wherein he stated he was on parole and that the "parole man" comes out once or twice a month and could verify that B had no bruises that he had seen.

*Pless v. State*, 260 Ga. 96 (390 SE2d 40) and *Fugitt v. State*, 256 Ga. 292 (348 SE2d 451), cited by appellant, are distinguishable from this case.

As a general rule, " '[i]t is no valid ground of objection to the admission in evidence of an incriminatory statement or confession made by the accused in a criminal case that the language indicated that the accused had committed also another and separate offense.' " *Berryhill v. State*, 235 Ga. 549, 551-552 (6) (221 SE2d 185). Moreover, if the statement at issue is an integral part of a confession to the crime for which the defendant is on trial, it is not rendered inadmissible because the language used therein indicates that the accused committed some other, separate offense. *Florence v. State*, 162 Ga. App. 830 (1) (292 SE2d 923); compare *Dampier v. State*, 245 Ga. 427 (10) (265 SE2d 565); *Robinson v. State*, 192 Ga. App. 32 (383 SE2d 593). Assuming that all jurors were aware that because appellant was on parole, he had a prior criminal record, and viewing the posture of the entire record, we find that it is highly probable that such error, if any, did not contribute to the verdict. *Johnson v. State*, 238 Ga. 59 (230 SE2d 869); compare *Florence*, supra at 832 (1).

2. Appellant asserts that the trial court erred by refusing to grant a mistrial when Dr. Burton was permitted to testify to the "ultimate issue" to be decided by the jury. The record reflects that appellant posed a timely objection at trial, but upon the specific grounds that Dr. Burton cast "prejudice" upon the defendant by testifying in open court that he was "rendering his [expert] opinion based on facts that he can't give to the jury." No timely objection was made to the testimony on the grounds that the witness invaded the province of the jury by testifying as to an "ultimate issue" in the case. "Since this ground was never made an issue before the trial court, no question is presented for appellate review." *Dairyland Ins. Co. v. McIntosh*, 171

Ga. App. 782, 783 (321 SE2d 110). "On appeal only issues properly raised before the trial court will be considered." *Department of Transp. v. Hillside Motors*, 192 Ga. App. 637, 638 (1) (385 SE2d 746).

In his brief, however, appellant also argues that Dr. Burton's statement that he had other information he was not permitted to tell the jury "was just short of telling the jury how certain he was of [a]ppellant's guilt." This particular issue was not reasonably contained within appellant's enumeration of error. "An enumeration . . . cannot be enlarged at the appellate level by statements in the briefs of counsel to include issues not made in the enumeration. [Cits.] One cannot expand the scope of review or supply additional issues through a process of switching, shifting, and mending your hold." (Citations and punctuation omitted.) *City of College Park v. Ga. Power Co.*, 188 Ga. App. 223-224 (372 SE2d 493). Moreover, appellant's counsel made an admission in judicio at the new trial motion hearing that this particular issue was "cured" by the subsequent curative action taken by the trial court.

3. Appellant asserts that he was denied effective assistance of counsel by his trial counsel's failure to object properly to certain opinion testimony of Ms. Pattillo regarding the "ultimate issue" to be decided by the jury. The motion for new trial was filed by appellant's trial defense counsel, and did not contain an allegation of error based on inadequacy of counsel. Subsequently, appellant was represented at the hearing on this motion by his current appellate counsel. At the motion for new trial hearing, appellate counsel expressly elected not to file an amended motion for new trial, claiming he had just received the files approximately eight days previous. Neither did appellant request any continuance or extension of time for the purpose of such filing.

During the motion for new trial hearing, while arguing the admissibility of certain expert testimony, appellate defense counsel stated, "we would make an *argument* that there might have been *some sort of* ineffective assistance of counsel. And the fact that the attorney did not make objection at that point when that evidence was entered, we wanted to perfect the record as to that point." (Emphasis supplied.) Thus, appellant was then aware of the possible existence of error based on inadequacy of counsel. Nevertheless, appellant did not attempt to assert such error specifically and to obtain a ruling thereon by the trial court. Moreover, appellant did not request that the motion for new trial be expanded to include an inquiry into this matter. At the hearing, appellant's trial defense counsel was called and questioned on another matter, and was not questioned regarding any assertion of inadequacy of counsel. Finally, appellant did not file an amended enumeration of error to assert inadequacy of counsel even following the conclusion of the hearing. Thus, appellant is attempting

to raise this issue for the first time on appeal even though he had *ample opportunity* to raise it properly at the hearing on the new trial motion. This is not a case where the appellate counsel did *not* represent the defendant on the motion for new trial. Compare *Meders v. State*, 260 Ga. 49 (10) (389 SE2d 320) and *Johnson v. State*, 259 Ga. 428 (3) (383 SE2d 115). As counsel has failed to raise the issue of inadequacy of counsel at "the earliest practicable moment," the issue is waived and it is unnecessary to discuss the merits. *Washington v. State*, 193 Ga. App. 823 (389 SE2d 407); see *Dawson v. State*, 258 Ga. 380 (369 SE2d 897) and *Thompson v. State*, 257 Ga. 386 (359 SE2d 664).

4. Appellant asserts that the trial court erred by failing to grant a directed verdict of acquittal as the evidence was insufficient as a matter of law. The test established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) "is the proper test . . . to use when the sufficiency of the evidence is challenged, whether the challenge arises from the overruling of a motion for directed verdict or the overruling of a motion for new trial based upon alleged insufficiency of the evidence." *Humphrey v. State*, 252 Ga. 525, 527 (1) (314 SE2d 436).

Under OCGA § 16-5-70, "cruelty to children may be committed by either of two methods: (1) by wilfully depriving a child of necessary sustenance to the extent that the child's health or well-being is jeopardized, or (2) by maliciously causing the child cruel or excessive physical or mental pain." *Howell v. State*, 180 Ga. App. 749, 751 (3) (350 SE2d 473). "The denial of necessary and appropriate medical care for a child under 18 years of age can constitute cruelty to a child when it causes the child 'cruel or excessive physical or mental pain,' under OCGA § 16-5-70 (b)." Id. at 751-752; compare *Lewis v. State*, 191 Ga. App. 287 (1) (381 SE2d 558).

For purposes of this Code section, " 'malice' in the legal sense, imports the absence of all elements of justification or excuse and the presence of an actual *intent* to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result." *Gaddis v. State*, 176 Ga. App. 526 (336 SE2d 587). "Intention may be manifest by the circumstances connected with the perpetration of the offense." (Citation and punctuation omitted.) *Daniel v. State*, 179 Ga. App. 54, 55 (1) (345 SE2d 143). Appellant's intent was a question of fact to be determined "upon consideration of 'words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.' [Cit.] The jury's [inherent] finding of intent will not be set aside unless it is clearly erroneous. . . . The intention with which an act is done is peculiarly a question for the jury . . . [further,] the jury was authorized in this case in finding as no excuse the appellant's [contentions of laudable motive and love for the

baby]." *McGahee v. State*, 170 Ga. App. 227 (1) (316 SE2d 832). "Appellant, in essence, has asked us to sanction cruelty to children so long as [he] 'did not mean to hurt' the child substantially and had no actual hatred and ill will in [his] heart. We cannot follow this reasoning. [His] deliberate intent, as well as [his] malice, was proven by the consequences of [his] act in this case." Id. at 228. *Turnipseed v. State*, 186 Ga. App. 278 (367 SE2d 259), cited by appellant, is distinguishable from this case.

On appeal the evidence must be viewed in the light most favorable to the verdict, and appellant no longer enjoys the presumption of innocence; moreover, on appeal this court determines evidence sufficiency, and does not weigh the evidence or determine witness credibility. *Robinson v. State*, 194 Ga. App. 432, 433 (1) (390 SE2d 652). The evidence was sufficient for a rational trier of fact to find appellant guilty beyond a reasonable doubt of cruelty to children, as charged. Consequently, the court did not err in overruling appellant's motion for a directed verdict of acquittal. *Jackson v. Virginia*, supra.

*Judgment affirmed. Banke, P. J., and Cooper, J., concur.*

DECIDED SEPTEMBER 6, 1990.

*John R. Greco*, for appellant.

*Thomas J. Charron, District Attorney, Rose L. Wing, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys*, for appellee.