OPINION OF THE COURT
Margarita Lopez Torres, J.
This case presents the court with a novel question: Does a pet owner commit an act of cruelty, for which he or she could be prosecuted criminally, by not providing an ill pet (in this case, terminally ill) with medical care? To answer this question the court must review not only the statute forbidding cruelty against animals, but also constitutional due process principles requiring fair notice of conduct that is criminally proscribed, as well as our current standards of morality with respect to pet owners’ duty to provide medical care for their animals.
Defendant is charged with overdriving, torturing and injuring animals and failure to provide proper sustenance (Agriculture and Markets Law § 353). Defendant has moved for dismissal of the information on the ground that the statute is unconstitutionally vague.
Relevant Facts
The factual part of the information in this case states as follows:
“Deponent [a special investigator of the ASPCA] states that, at the above time and place, the deponent observed a dog sitting behind a fence at the above-mentioned location and that said dog did have difficulty walking due to large tumor hanging from said dog’s stomach and that said tumor was bleeding.
“The deponent is further informed by the defendant’s own statements that the defendant resides at the above-mentioned location and that the defendant is the owner of the dog and that the defendant owned the dog for approximately six years, he knew that she had a tumor and was in pain, he decided not to provide medical treatment for the dog because it was to [sic] expensive.
“The deponent is informed by Doctor Bunni Tan of the ASPCA that the informant did examine the above-mentioned dog, and that said dog did have a very large mammory [sic] gland *670 tumor on the lower stomach area, and that the surface of said tumor had several ulcerations that leaked fluid causing a chronic medical condition, which was neglected to the point where her tumor was uncomfortable and painful for the dog, and that the tumor was approximately the size of a large grapfruit [sic] and that said tumor required ¡a painful and extensive surgery and that said dogs [sic] conditioh is terminal.”
The parties’ submissions present the following additional facts for the court’s consideration:
On February 11, 2003, American Society for the Prevention of Cruelty to Animals (ASPCA) special investigator Anne-Marie Lucas visited defendant’s house in Brooklyn in response to an anonymous call concerning a dog with ja large tumor hanging from its stomach. Once there, Ms. Lucas found four dogs inside a fenced-in yard. One of the dogs had a large bleeding tumor. Ms. Lucas spoke with a man who identified himself as someone who was taking care of the dogs while their owner was on vacation. He identified defendant as the owner of the dogs. Ms. Lucas took the dog with her and transported it to the ASPCA hospital in Manhattan where the dog eventually had surgery and was diagnosed with terminal cancer.
Upon his return from vacation, at Ms. Lucas’ request, defendant went to the ASPCA offices to meet with her. The minutes of a hearing held before another judge of this court, pursuant to People v Huntley (15 NY2d 72 [1965]), reveal that during that meeting, defendant acknowledged to Ms.; Lucas that he was the owner of the dog, that he knew the dog ¡had a tumor, and that he had not provided medical care to the dog because of his limited finances. Defendant added that he was familiar with cancer because a relative had had cancer and painful chemotherapy and stated that he believed that the dog should live out her life without intervention. Ms. Lucas then arrested defendant.
The Parties’ Contentions
In support of his motion, defendant argues that Agriculture and Markets Law § 353 is vague because the terms “necessary sustenance” and “unjustifiable physical pain” (this latter one included in the definition of “torture” and “cruelty” of Agriculture and Markets Law § 350 [2]) are not specific enough to provide notice that an owner must provide medical care to a terminally ill animal. *
In opposition, the People argue that Agriculture and Markets Law § 353 is not so vague as to violate due process standards *671 and that the statute gave enough notice to defendant that he was required to get veterinary care for his dog. In particular, the People argue that “[t]he intent of the legislature and wording of the applicable statute” make it clear that the term sustenance means more than food and drink. The People also argue that the statute’s failure to define the term “unjustifiable” does not make the statute vague because that term has “an extremely common” meaning in the vernacular.
The Statutes in Question
Section 353 of the Agriculture and Markets Law provides:
“A person who overdrives, overloads, tortures or cruelly beats or unjustifiably injures, maims, mutilates or kills any animal, whether wild or tame, and whether belonging to himself or to another, or deprives any animal of necessary sustenance, food or drink, or neglects or refuses to furnish it such sustenance or drink, or causes, procures or permits any animal to be overdriven, overloaded, tortured, cruelly beaten, or unjustifiably injured, maimed, mutilated or killed, or to be deprived of necessary food or drink, or who wilfully sets on foot, instigates, engages in, or in any way furthers any act of cruelty to any animal, or any act tending to produce such cruelty, is guilty of a misdemeanor, punishable by imprisonment for not more than one year, or by a fine of not more than one thousand dollars, or by both.”
“Torture” or “cruelty” is defined by section 350 (2) of the Agriculture and Markets Law as “includ[ing] every act, omission, or neglect, whereby unjustifiable physical pain, suffering or death is caused or permitted.”
Discussion
The Void-for-Vagueness Doctrine
Consistent with the concept of basic fairness ingrained in oür State and Federal Constitutions, due process requires that a penal statute be sufficiently definite by its terms so as to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden by the law. (People v Bright, 71 NY2d 376, 382-383 [1988].) This axiomatic principle has been a part of our country’s jurisprudence for almost two centuries. (People v Stuart, 100 NY2d 412, 418 [2003].)
“In a challenge to the constitutionality of a penal law on the grounds of vagueness, ... a two-pronged analysis is required. *672 First, the statute must provide sufficient'notice of what conduct is prohibited; second, the statute must not be written in such a manner as to permit or encourage arbitrary and discriminatory enforcement.” (People v Bright, supra at 382.)
With respect to the first prong, the rationale behind the requirement that a penal statute provide sufficient notice is the notion “that no man shall be held criminally responsible for conduct which he could not reasonably .understand to be proscribed.” (Id. [internal quotation marks omitted], citing United States v Harriss, 347 US 612, 617 [1954].) For this reason the Legislature may not criminalize conduct that is inherently innocent merely “because such conduct is ‘sometimes attended by improper motives,’ since to do so would not fairly inform the ordinary citizen that an otherwise innocent act is illegal.” (People v Bright, supra at 383.)
In determining the sufficiency of the I notice, a statute that does not implicate First Amendment issues must of necessity be examined in the light of the conduct with which a defendant is charged. (United States v National Dairy Prods. Corp., 372 US 29, 33 [1963]; United States v Powell, 423 US 87, 92 [1975].) The issue that must be determined by the court is whether the statute provides an adequate warning as applied in a specific situation, i.e., the facts before the court. (Mitchell v Fischer, 300 AD2d 490 [2d Dept 2002]; People v Nelson, 69 NY2d 302 [1987].) The possibility that the statute may be vague as applied to other hypothetical situations will not be considered. (Mitchell v Fischer, supra; People v Nelson, supra.)
A statute is not vague merely because it fails to define a word or term. (People v Knowles, 184 Misc 2d 474, 477 [Rensselaer County Ct 2000].) Similarly, a statute does not need to designate every particular situation or circumstance that calls for the imposition of the penalty. (People v Belfrom, 124 Misc 2d 185, 188-189 [Sup Ct, Queens County 1984].) The test is whether the language used “conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.” (United States v Petrillo, 332 US 1, 8 [1947].)
Necessary Sustenance
The court in this case must then determine whether Agriculture and Markets Law § 353 gives sufficient notice to a pet owner that not providing medical care to dn ill animal is a crime. In particular, the court should determine whether the term “necessary sustenance” includes the provision of medical care to an animal, such that defendant should have been on notice *673 that his decision not to provide veterinary care to his pet was a crime. Defendant does not argue that the phrase “necessary sustenance” as used in the statute is vague per se or on its face, but that it is vague as applied to the facts of this case.[1] As stated above, the People argue that the wording of Agriculture and Markets Law § 353 makes clear that the term “sustenance” refers to more than food or drink, and that it also includes medical care.
When constructing a statute, the intention of the Legislature is first to be sought from a literal reading of the act itself. (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [b], at 182.) The language of the statute in this case is anything but clear. The first time the statute mentions the term “sustenance,” it refers to depriving an animal of “necessary sustenance, food or drink” Then, within the same sentence, the statute refers to neglecting or refusing to furnish the animal “that sustenance or drink.” Finally, the statute states, again within the same sentence, that it is also a violation of the statute to permit any animal to be deprived “of necessary food or drink.” From the grammatical construction employed the first time the phrase is used, i.e., the use of an appositive set off by commas, the court infers that the Legislature intended to define sustenance as “food or drink.” The use of the term “sustenance” in place of the word “food,” as in “sustenance or drink,” the second time the phrase is used within the same sentence supports this inference. The third time the phrase is used the statute omits the word sustenance and refers merely to “necessary food or drink,” which further supports the notion that the Legislature meant “food or drink” when it wrote “sustenance.”
The available legislative history does not shed any light on the intent of the Legislature when it included the term “sustenance” in the statute. The term was first included in the laws *674 forbidding cruelty against animals in 1867 when the Legislature for the first time made it a crime to deprive “any living creature” of “necessary sustenance,” but that statute did not qualify or define the term in any way. (See, L 1867, ch 375, § 1.) The language in the current statute (including the three phrases discussed above and the words “food and drink”) was added in 1881. (See, Penal Code of 1881 § 655, added by L 1881, ch 676.) Unfortunately, none of the official legislative documents ordinarily used to aid in the interpretation of the meaning of language in a statute such as petitions to the Legislature, the records of debates and proceedings in the Legislature, or committees’ reports and recommendations ban be located for the anticruelty statutes passed by the Legislature before 1911.[2] No reported judicial opinions before 1881 provide an interpretation of the term.
The only reported case that interprets the term “sustenance” in the context of Agriculture and Markets Law § 353 is People v O’Rourke (83 Misc 2d 175 [Crim Ct, NY County 1975]). In that case, the owner of a horse used to pull a hansom cab was accused of violating section 353 because hfe allowed the horse to continue to work even though it was limping. The court, noting that “sustenance” was defined by the Webster’s Third New International Dictionary (1966) as “the supplying or being supplied with the necessaries of life,” held that forcing a horse that is limping to continue to work “without supplying necessary medical attention” constituted neglect under the statute (at 178-179).
O’Rourke is distinguishable from the present case. The court in O’Rourke was faced with very compelling facts: on three different occasions, ASPCA inspectors had warned the owner of a horse used for commercial labor that the horse was limping, and had issued two summonses to him instructing him to suspend the horse from labor because of its physical condition. The owner continued to use the horse to pull a cab. Under those circumstances the court held that an animal used for labor must be provided with necessary medical attention if the animal is to continue working, especially after its lame condition has been brought to the attention of the owner.
To the extent that the O’Rourke case appears to hold that the term “sustenance” as used in the statute includes the pro *675 vision of medical care, this court declines to follow it. “[Statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 94.) “[T]he language of an enactment should be given its plain meaning, or its everyday commonplace interpretation.” (Id., Comment, at 194.) The Oxford English Dictionary (Oxford Univ Press [1971]) defines sustenance as, inter alia, “means of sustaining life; food, victuals”; “a kind of quantity of food”; “nourishment”; and “the action of sustaining life by food.” These definitions comport with the popular meaning of the term as used in the vernacular, that is, that sustenance refers to food and nourishment, and the court will adopt this meaning in interpreting the statute.
This court’s holding that the term “sustenance” as used in the statute does not refer to the provision of medical care is consistent with the finding of the highest appellate court in the nation to interpret the meaning of the term. In Howell v State (180 Ga App 749, 350 SE2d 473 [1986]), the Court of Appeals of Georgia held, in the context of a statute proscribing cruelty to children, that denial of necessary medical care to a child “does not constitute a denial of ‘sustenance.’ ” (Id., 180 Ga App at 752, 350 SE2d at 476.) Citing the Georgia Supreme Court, the Howell court stated that “[n]ecessary sustenance” was “that which supports life; food; victuals; provisions . . . that necessary food and drink which is sufficient to support life and maintain health.” (Howell, 180 Ga App at 751, 350 SE2d at 476 [internal quotation marks omitted], quoting Caby v State, 249 Ga 32, 33, 287 SE2d 200, 201 [1982].)
The primary consideration in interpreting a statute is to “ascertain and give effect to the intention of the Legislature,” and the plain meaning of the statutory text is the best evidence of such intent. (Riley v County of Broome, 95 NY2d 455, 463 [2000].) The court finds that the plain meaning of the term “sustenance” in the statute does not include medical care. Therefore, the provision making it a violation of the statute to fail to provide necessary sustenance does not afford notice to a person of ordinary intelligence that not providing medical care for an animal is a violation of the statute.
Unjustifiable Physical Pain
The court must also determine whether, when measured by common understanding and practice, as well as society’s sense of morality, the language of the statute, and specifically, the *676 term “unjustifiable,” conveys sufficient notice to a person that his or her decision not to provide a pet with medical care is a crime. The answer to this question requires the court’s analysis of common understanding, practice and moral standards and how these notions inform the meaning of the term “unjustifiable” in the context of laws protecting animals.
Since at least biblical times, humans have considered animals as chattel. The Book of Genesis asserts that man was given “dominion over the fish of the sea, over the fowls of the air and the beasts, and the whole earth and every creeping creature that moveth upon the earth.” (Genesis, ch 1, verse 28.) As commentators have pointed out, even though anticruelty laws are meant to protect animals, the statutes are not intended to interfere with the owners’ possession,: use and enjoyment of their animals. (See, 4 Am Jur 2d, Animals § 29, at 370; Francione, Animals, Property and Legal Welfarism: “Unnecessary” Suffering and The “Humane” Treatment of Animals, 46 Rutgers L Rev 721, 757-765.)
Thus, anticruelty statutes, including Agriculture and Markets Law § 353, do not prohibit causing pain to animals but causing “unjustifiable” pain. (People v Downs, 136 NYS 440 [City Magis Ct 1911]; Hammer v American Kennel Club, 304 AD2d 74, 78 [1st Dept 2003].) In the context of thése statutes, an act is considered justifiable “where its purpose or object is reasonable and adequate, and the pain and suffering caused is not disproportionate to the end sought to be attained.” (4 Am Jur 2d, Animals § 29, at 370.) That is, not all pain and suffering is prohibited and some pain, even if substantial, is considered justifiable. For instance, branding is allowed, even though it causes pain, because it is found to be justified by the owner’s need to enjoy his or her property. Hunting and fishing as sports are not prohibited by anticruelty statutes, even Though they are arguably the ultimate form of cruelty, because these activities are found to be justified by the need of some people to engage in killing animals as a recreational activity. Similarly, the killing of animals for their pelts to adorn clothing and accessories is permitted.
The question of what is justifiable — or unjustifiable — in the context of anticruelty statutes protecting either children or animals has also been the subject of discussion in judicial opinions from several states. A review of these decisions reveals that courts across the nation are split on the issue of whether the term “unjustifiable” is a vague term, incapable of conveying *677 a proscription. Appellate courts of at least two states have held that statutes containing the phrase “unjustifiable physical pain” are unconstitutionally vague as a result of the uncertainty of that phrase. (See, State v Meinert, 225 Kan 816, 594 P2d 232 [1979]; State v Ballard, 341 So 2d 957 [Ct Crim App, Ala 1976].) The opposite result was reached in People v Smith (35 Cal 3d 798, 678 P2d 886 [1984]), State v Eich (204 Minn 134, 282 NW 810 [1938], and State v Comeaux (319 So 2d 897 [La 1975]).
Some of the cases holding that the term is not vague have offered their own definitions. One court found that it is a “word[ ] of limitation” on the proscribed conduct that refers to “exceeding the bounds” of what is reasonable. (See, State v Comeaux, supra at 899.) Another court found that “unjustifiable” may be defined as “not justifiable; not defensible or right,” and concluded that when it used the word “unjustifiable,” the Legislature intended to criminalize the infliction of physical pain “which could not be defended, or vindicated, or which was not exculpable, excusable or authorizable, under the circumstances.” (People v Curtiss, 116 Cal App Supp 771, 779, 300 P 801, 804 [Appellate Dept, Super Ct 1931].) A New York court equated the term “justifiable” with “unavoidable.” (People v Downs, supra at 445.)
Two New York published decisions have dealt with the issue of whether the term “unjustifiable” in the context of Agriculture and Markets Law § 353 is too vague to inform persons of the particular conduct or pain that is prohibited by the statute. Defendant relies on one of them, People v Rogers (183 Misc 2d 538 [Watertown City Ct 2000]). In Rogers, the defendant argued that the use of the word “unjustifiable” in sections 353 and 350 violated the Due Process Clause because it failed to give adequate notice that the conduct of docking a dog’s tail was proscribed by the statutes. The court held that since docking a dog’s tail is conduct that is innocent and neither prescribed nor proscribed by statute, it may not be made a crime by the mere adding of the prefix “un” before the term “justified,” because adding the prefix offers no more guidance to a reasonable person with respect to the legality of his or her conduct. The court found that the use of the terms “unjustifiable” and “unjustifiably” as applied to defendant’s conduct was vague and violated due process notions.
In the second New York case, People v Bunt (118 Misc 2d 904 [Just Ct, Dutchess County 1983]), the defendant was charged under Agriculture and Markets Law § 353 with “brutally” beat *678 ing a dog with a baseball bat. He challenged the constitutionality of the statute arguing, inter alia, that the term “unjustifiably,” as used in the statute, was vague. The court held that the statute in general gave defendant enough notice that the conduct with which he was charged violated the statute, and that what is justifiable is to be evaluated in the context of the moral standards of the community. (Id. at 909.)
It is clear from the above discussion that what is “unjustifiable” in the context of anticruelty statutes is what is not reasonable, defensible, right, unavoidable or excusable. This court agrees with the reasoning in People v Rogers (supra) and is not inclined to accept that merely adding the term “unjustifiable” to the word “pain” transforms conduct that is inherently innocent, like allowing an animal to die of natural causes without providing medical care, into a crime. As the Court of Appeals held more than a century ago, “purely statutory offenses cannot be established by implication, and . . . acts otherwise innocent and lawful, do not become crimes, unless there is a clear and positive expression of the legislative intent to make them criminal. The citizen is entitled to an unequivocal warning before conduct on his part, which is not malum in se, can be made the occasion of a deprivation of his liberty or property.” (People v Phyfe, 136 NY 554, 559 [1893].)
Neither does the court believe that society’s current practice or the moral standards of our community expand the meaning of the term “unjustifiable” to include a duty on owners to provide their animals with medical care. This is especially true in the case of a terminally ill pet. Reading into Agriculture and Markets Law § 353 an affirmative duty to provide medical care in all cases, regardless of the expenses or the owner’s ability to meet them, implies a standard of morality and decency that the court is not persuaded society has adopted.[3] Judging by the current lack of national consensus regarding the provision of af *679 fordable health care for our less affluent citizens, to impose seemingly limitless mandates on owners to provide health care for their pets based on the vague language of this statute would be overreaching on the part of this court. The court concludes that, as used in section 350, the term “unjustifiable physical pain” is too vague to warn pet owners that not providing medical care for their pets is a crime.
This court is aware that courts from several states have read into their respective anticruelty statutes the duty to provide veterinary care to animals. (See, e.g., People v Olary, 382 Mich 559, 170 NW2d 842 [1969]; Elam v Texas, 1990 WL 68468, 1990 Tex App LEXIS 1234 [Tex Ct App, 1st Dist, May 24, 1990]; People v Sanchez, 94 Cal App 4th 622, 114 Cal Rptr 2d 437 [3d Dist 2001]; Biggerstaff v State, 435 NE2d 621 [Ind App 1982].) However, in all of those cases the animals were severely neglected, and showed signs of malnourishment. Most were described as having emaciated bodies. In all the cases, the owners’ failure to provide medical attention was but one more act of neglect toward the animals. Under those circumstances, the failure to provide medical care was just an element in a pattern of neglect constituting cruelty. In the present case, there is no allegation that defendant in any way neglected his animals. In fact, the only dog that was removed from defendant’s house by the ASPCA investigator was the one that is the subject of the present complaint. The others were allowed to stay at defendant’s home, presumably because they showed no signs of neglect. Defendant’s decision not to provide medical care to his dog was not part of a pattern of neglect on his part but a conscious decision not to do it based on his moral beliefs and limited finances.
Furthermore, the court is troubled by the imposition of a duty to provide care in light of a statute that, like section 353, is so general in its terms. Reading this duty into the statute will create a myriad of logistical problems. For instance, how is the standard of medical care that must be provided to be determined (i.e., to what extent must treatment be provided to avoid prosecution; is providing regular veterinary care sufficient; or, in light of the sophisticated medical procedures that are now available for animals — chemotherapy, radiation therapy, organ *680 transplants — will that level of treatment be required; will mental health treatment be required); and how would that standard be judged (what kind of expense is it mandated to be incurred to avoid prosecution)? It will also create ethical issues that are difficult to discern in the absence of a legislative pronouncement (when is extending a petfs life permissible; when is putting an animal to death mandated; up to what point do we respect the owners’ choice to refuse invasive treatment for their pets and allow them to die at home in the company of their human and nonhuman companions, rather than in a strange and antiseptic environment).
Finally, the court is very mindful that animals are living creatures that feel pain and experience suffering. If we, as a society, have arrived at the point where we feel that the provision of medical care to alleviate or avoid pain and suffering is a duty undertaken by pet owners toward their pets, and that failure to fulfill this duty should be a crime, it is incumbent upon our Legislature to enact a provision that clearly sets the standard for — and gives notice of — the proscribed conduct. The legislatures of other states have already done so. (See, e.g. 18 Pa Cons Stat Ann § 5511 [c] [Pennsylvania anticruelty statute] and Md Code [Grim Law] § 10-604 [Maryland statute], both providing that depriving an animal of veterinary care is a crime.) In fact, our own Legislature has deemed it appropriate to require pet dealers to provide appropriate and necessary veterinary care to animals in their custody and possession. (See, Agriculture and Markets Law § 401 [5].) But it has failed to impose the same duty on animal owners and, until it does, the court will not substitute its own sensibilities for those of the Legislature and is constrained to find that a pet owner may not be prosecuted under Agriculture and Markets Law § 353 for failing to provide an ill pet with medical care.
Conclusion
The court finds that Agriculture and Markets Law § 353 is unconstitutionally vague as applied to the facts of this case. In particular, the court finds that section 353 does not give notice to a person of ordinary intelligence that he or she is obligated to provide veterinary care to a terminally ill animal. Therefore, defendant’s motion to dismiss is granted.

. Even though the court has not been asked to, and will not, address the issue of the unconstitutional vagueness of section 353 on its face, it will point out that the language of the statute is not an example of precision and clarity. (See, People v Bunt, 118 Misc 2d 904 [Just Ct, Dutchess County 1983] [noting that section 353 is constitutional but not well drafted].) The language in the current version of the statute was drafted in 1881 (see, section 655 of the Penal Code of 1881), and it has been incorporated, without major changes, into every anticruelty statute enacted since then. The statute’s mandates appear extremely broad, if not infinite. For instance, the plain language of the statute seems to require the provision of sustenance to “any animal,” whether “wild or tame.” This provision could be read to make it a crime not to provide food or water to squirrels or birds in one’s backyard or a park, as well as to animals in the wilderness.

. The court was informed by a staff member of the New York State Legislative Library that in 1911 a fire in Albany destroyed a significant part of the State Library collection and that the legislative history documents pertaining to statutes passed prior to that year were lost ás a result.

. It should be noted that the statute that makes child neglect a crime, i.e., endangering the welfare of a child, specifically requires the provision of medical care to children. See, Penal Law § 260.10, which incorporates the definition of “neglected child” from section 1012 (f) (i) (A) of the Family Court Act. In addition, in order to charge a parent or guardian with endangering the welfare of a child as a result of child neglect, a showing must be made that the parent failed to supply medical care to the child “though financially able to do so or offered financial or other reasonable means to do so.” (Family Ct Act § 1012 [f] [i] [A].) If, as reflected in this legislative pronouncement, society’s standard of morality imposes a duty on parents to provide medical care for their children only if they are financially able to do so, imposing a duty on pet owners regardless of their financial ability would make certain acts a crime if *679 committed toward an animal and yet not a crime if committed toward a child. The Legislature could not have intended to “hold a person to a higher standard of conduct with respect to an animal than toward a fellow human being.” (People v Carr, 183 Misc 2d 94, 96 [Just Ct, Erie County 1999].)