ROGERS, C.J.
**22 This case requires us to examine the meaning of language used in **23 General Statutes § 53-247 a),[1] a provision that criminalizes a broad range of acts of cruelty to animals. The defendant, Delano Josephs, appeals[2] from the judgment of conviction of a single violation of § 53-247 (a), stemming from his shooting of his neighbor's cat with a BB gun.[3] The defendant claims that (1) the trial court improperly concluded that the clause of § 53-247 (a) applicable to his conviction, which bars a person from "unjustifiably injur[ing]" an animal, requires only a general intent to engage in the behavior causing the injury, (2) the *546 phrase "unjustifiably injures" in § 53-247 (a) is unconstitutionally vague both facially and as applied to the facts of this case and (3) the evidence was insufficient to support the defendant's conviction pursuant to § 53-247 (a). We disagree **24 with each of these claims and, accordingly, affirm the judgment of conviction.
The defendant was convicted after a trial to the court. The record reveals the following facts that the trial court reasonably could have found. At the time of the events in question, the defendant lived next door to Lorraine Leiner, who kept a number of cats as pets and allowed them to roam outdoors. On June 3, 2012, Peter Bombard, who was visiting one of Leiner's tenants,[4] was parked by Leiner's house when he heard three distinct noises that he identified as a BB gun being discharged. Bombard exited his car and saw a man he recognized as the defendant walking with a BB gun in his hands. Bombard testified that the man acted "like he was stalking something" and moved "the way a hunter would walk." Upon noticing Bombard, the defendant cocked the gun and made "direct eye contact" before "slowly back[ing] up out of [his] view ...."
On the night of June 14, 2012, Leiner's cat, Wiggles, came inside, and, the next morning, Leiner noticed blood on Wiggles' shoulder. She brought the cat to the Animal Hospital of Berlin for treatment where Veterinarian David Hester took a radiograph of Wiggles and determined that the cat had a "metal opacity" of about "three or four millimeters," consistent with a BB, located "[a]djacent to about the tenth vertebra" of its spine. Hester treated Wiggles but did not remove the BB. At the defendant's trial, Hester testified that BB gun injuries to cats are uncommon and rarely seen.
After Hester treated Wiggles, Leiner complained to the police that "a neighbor was shooting her cats." In investigating the complaint, Animal Control Officer James Russo spoke with the defendant in his driveway in late July or early August, 2012. Russo testified that **25 the defendant "openly admitted that he does have a BB gun" and that "he was shooting at the cats to scare them away" from coming onto his property, although he also stated that "he had no means of hurting any cats."
The defendant alleged during his oral motion for a judgment of acquittal that the "unjustifiably injures" clause of § 53-247 (a) required specific intent to "harm the animal, to shoot the animal." In its final ruling, the trial court rejected this argument, determining that "[t]he state [was] not required to prove the defendant intended to injure the animal" because the crime only required a general intent to engage in the conduct in question.
The trial court found that "the credible evidence establishes the state prove [d] the elements of the offense [of] cruelty to animals pursuant to § 53-247 (a) beyond a reasonable doubt and, therefore, [found] the defendant guilty [of one count of cruelty to animals]." See footnote 3 of this opinion. The defendant was sentenced to thirty days incarceration, execution suspended, and six months of probation. This appeal followed.
I
MENS REA
The defendant, who was convicted pursuant to the portion of § 53-247 (a)
*547 that bars a person from "unjustifiably injur[ing]" an animal, claims first that the trial court committed reversible error by applying the wrong mens rea for the crime. Although acknowledging that the "unjustifiably injures" clause of § 53-247 (a) is unaccompanied by any mens rea qualifier, the defendant contends that the state must prove that he had the specific intent to injure Wiggles, rather than the general intent to do the act that led to the injury. In response, the state argues that "[t]he plain language of § 53-247 (a), **26 its relationship to the other statutes and its legislative history all demonstrate that the legislature intended for the prohibition against unjustifiably injuring an animal to require only the general intent to engage in the action that ultimately results in injury to the animal." We agree with the state.
The issue of the requisite mens rea applicable to the "unjustifiably injures" clause of § 53-247 (a)"is a question of statutory interpretation, over which our review is plenary." State ex rel. Gregan v. Koczur , 287 Conn. 145, 152, 947 A.2d 282 (2008). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. ... In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply." (Internal quotation marks omitted.) Id. Pursuant to General Statutes § 1-2z, the "meaning of a statute, shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If ... the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." A statute is ambiguous if, "when read in context, [it] is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) State v. Pond , 315 Conn. 451, 467, 108 A.3d 1083 (2015).
Connecticut's case law distinguishes between general and specific intent. "In determining [whether a crime] requires proof of a general intent [or] of a specific intent, the language chosen by the legislature in enacting a particular statute is significant. When the elements of a crime consist of a description of a particular act and a mental element not specific in nature, the only issue is whether the defendant intended to do the proscribed act. If he did so intend, he has the requisite general **27 intent for culpability. When the elements of a crime include a defendant's intent to achieve some result additional to the act, the additional language distinguishes the crime from those of general intent and makes it one requiring a specific intent." (Internal quotation marks omitted.) State v. Roy , 173 Conn. 35, 45, 376 A.2d 391 (1977) ; see also General Statutes § 53a-5 ("[w]hen the commission of an offense ... or some element of an offense, requires a particular mental state, such mental state is ordinarily designated in the statute defining the offense by use of the terms 'intentionally,' 'knowingly,' 'recklessly' or 'criminal negligence' "). Moreover, "[w]e are not permitted to supply statutory language that the legislature may have chosen to omit." Vaillancourt v. New Britain Machine/Litton , 224 Conn. 382, 396, 618 A.2d 1340 (1993).
Section 53-247 is comprised of subsections (a) through (e). Subsections (b) through (e) each include explicit specific intent terms, specifically, "maliciously and intentionally," "knowingly," and "intentionally," that apply to all of the acts proscribed by the particular subsection.
*548 General Statutes § 53-247 (b) through (e).[5]
**28 In contrast, § 53-247 (a) lacks a mens rea term that applies to every proscribed act listed therein and, instead, contains some clauses that include a specific intent term and others that do not. See footnote 1 of this opinion. This differing structure strongly supports a conclusion that the legislature did not intend for all of the acts proscribed by § 53-247 (a) to be accompanied by the same mens rea.
Additionally, unlike the clause at issue, in other clauses of § 53-247 (a), the adverb "unjustifiably" appears in conjunction with additional language that clearly requires specific intent. Specifically, the clause under which the defendant was convicted refers to any person who "unjustifiably injures any animal," but other portions of subsection (a) later refer to any person who "unjustifiably administers any poisonous or noxious drug or substance to any domestic animal or unjustifiably exposes any such drug or substance, with intent that the same shall be taken by an animal ...." (Emphasis added.) General Statutes § 53-247 (a). This plainly indicates that, in § 53-247 (a), "unjustifiably" means something different from "intentionally" and that the legislature will include specific intent language along with the word "unjustifiably" when it intends for a specific intent to apply. See State v. Roy , supra, 173 Conn. at 45, 376 A.2d 391. The legislature's differing treatment of these two clauses within the same subsection convinces us that the "unjustifiably injures any animal" clause, under which the defendant was charged, requires only a general intent. General Statutes § 53-247 (a).
**29 The defendant argues that we should read a specific intent requirement into the prohibition in § 53-247 (a) against "unjustifiably injur[ing]" an animal because subsection (b) of § 53-247 punishes "maliciously and intentionally" maiming, mutilating, torturing, wounding or killing an animal, and, in the defendant's view, there is "no discernable reason to have two different standards of proof for conduct that ... could be charged under either subsection of the statute." We are not persuaded by this argument because there is a clear reason for an additional mens rea element in subsection (b), namely, the punishment *549 imposed by subsection (b) is more severe than that imposed by subsection (a).[6] General Statutes § 53-247 (a) and (b).
The defendant further contends that the trial court should have required proof of specific intent to injure an animal because requiring only general intent would lead to absurd results. In the defendant's view, a person who accidentally hit a dog while driving a car would be liable under a general intent interpretation of the statute. We disagree because, even in such circumstances, a general intent to do the act of striking the animal still would be lacking. Moreover, in such situations, the state would still need to prove that the injury was unjustifiable in order to obtain a conviction.
As demonstrated by the foregoing analysis, the plain and unambiguous language of the clause in § 53-247 (a) that the defendant was charged with violating required **30 only a general intent when read in the context of the entirety of subsection (a) and within § 53-247 as a whole. Accordingly, the trial court properly concluded that the state was not required to prove that the defendant possessed the specific intent to injure Wiggles.
II
VOID FOR VAGUENESS
The defendant claims next that § 53-247 (a), when applied to his conduct, is unconstitutionally vague. Because this claim is unpreserved, he seeks review of it pursuant to State v. Golding , 213 Conn. 233, 239-40, 567 A.2d 823 (1989).[7] We conclude that, although the record is adequate for review and the defendant has raised a claim of constitutional magnitude, he has not shown the existence of a constitutional violation that deprived him of a fair trial.
Section 53-247 (a) provides in relevant part: "Any person who ... unjustifiably injures any animal ... shall, for a first offense, be fined not more than one thousand dollars or imprisoned not more than one year or both ...." The defendant contends that the phrase " 'unjustifiably injures' " is unconstitutionally vague on its face and as applied to him "because it does not indicate when an injury to an animal is unjustifiable" and judicial gloss has not cured this infirmity. The state responds that any person of ordinary intelligence would understand that shooting a cat with a BB gun so as to **31 cause an injury is not a justifiable act when that cat is simply trespassing on his property. Thus, the *550 state contends, the defendant's claim fails under the third prong of Golding . We agree with the state.
The following principles govern our consideration of the defendant's claim. "A statute ... [that] forbids or requires conduct in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. ... Laws must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. ... A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. ... To demonstrate that [a statute] is unconstitutionally vague as applied to [him], the [defendant] therefore must ... demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. ... [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute ... and the guarantee against standardless law enforcement. ... If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties." (Internal quotation marks omitted.) State ex rel. Gregan v. Koczur , supra, 287 Conn. at 156, 947 A.2d 282. In particular, pursuant to General Statutes § 1-1 (a), "[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." "References to judicial opinions involving the statute, **32 the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Internal quotation marks omitted.) State v. Winot , 294 Conn. 753, 759, 988 A.2d 188 (2010). "Unless a vagueness claim implicates the first amendment right to free speech, '[a] defendant whose conduct clearly comes within a statute's unmistakable core of prohibited conduct may not challenge the statute because it is vague as applied to some hypothetical situation ....' " State ex rel. Gregan v. Koczur , supra, at 156-57, 947 A.2d 282. In contrast, "[i]n a facial vagueness challenge, we ... examine the challenged statute to see if it is impermissibly vague in all of its applications. A statute that is impermissibly vague in all its applications is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. ... Such a provision simply has no core. ... A defendant whose conduct clearly comes within a statute's unmistakable core of prohibited conduct may not raise a facial vagueness challenge to the statute." (Citations omitted; emphasis in original; internal quotation marks omitted.) State v. Indrisano , 228 Conn. 795, 804, 640 A.2d 986 (1994).
We agree with the defendant that the phrase "unjustifiably injures" in § 53-247 (a) is susceptible to differing interpretations and, therefore, could be vague when applied to some situations. See, e.g., People v. Arroyo , 3 Misc.3d 668, 669, 679, 777 N.Y.S.2d 836 (2004) (holding that New York statute, worded similarly to § 53-247 (a), that prohibits "unjustifiably injur[ing]" animals was unconstitutionally vague as applied to defendant who chose not to provide veterinary care to terminally ill dog). Nevertheless, our careful review of the record in this case, as well as other *551 relevant law, satisfies us that the defendant's conduct came within the unmistakable **33 core of prohibited conduct under § 53-247 (a). First, General Statutes § 53-203[8] makes it abundantly clear that injuring a neighbor's pet cat by shooting it with a BB gun is not permissible, and, further, General Statutes § 22-351[9] disallows the injuring or killing of a companion animal by any means when such act is not authorized by law. Second, although the statutes governing companion animals, as well as our historical common law, allow for the killing, and by extension injuring, of such animals under certain defined circumstances; see, e.g., General Statutes § 22-358 (a) (permitting killing of dog observed to be "pursuing or worrying any ... domestic animal or poultry"); General Statutes § 22-358 (b) (permitting person bitten by dog or cat, when not present on owner's premises, to kill such dog or cat during attack); General Statutes § 22-359 (b) (permitting "humane euthaniz[ation]" of rabid dog or cat without prior notice to owner); see also Woolf v. Chalker , 31 Conn. 121, 128-31 (1862) (enumerating similar concepts as to dogs); but see Vendrella v. Astriab Family Ltd. Partnership , 311 Conn. 301, 315, 87 A.3d 546 (2014) (recognizing certain principles described in Woolf inconsistent with subsequent case law); those circumstances clearly do not encompass a mere trespass by an animal. See Soucy v. Wysocki , 139 Conn. 622, 628, 96 A.2d 225 (1953) (defendant was not justified in shooting dog that had trespassed and was retreating from pens where defendant kept his pheasants); **34 Johnson v. Patterson , 14 Conn. 1, 5, 11 (1840) (defendant was not justified in poisoning plaintiff's fowls, which had trespassed on defendant's land). Additionally, decisions from other jurisdictions lend further support to our conclusion that the defendant's actions here clearly constituted unjustifiable injury and, therefore, unlawful cruelty to Wiggles. See Commonwealth v. Szewczyk , 89 Mass.App.Ct. 711, 713, 717, 53 N.E.3d 1286 (2016) (defendant's shooting of dog with pellet gun to discourage her from returning to, and defecating on, defendant's property was unjustifiable infliction of pain pursuant to anticruelty to animals statute); Bartlett v. State , 929 So.2d 1125, 1126 (Fla. App. 2006) (defendant's repeated shooting of opossum with BB gun after driving it from his garage was infliction of unnecessary pain pursuant to anticruelty to animals statute); see also 4 Am. Jur. 2d 486, Trespassing Animals § 110 (2007) ("[o]rdinarily, the intentional killing or maiming of trespassing animals merely because they are trespassing is considered to be wrongful and to render the person killing or maiming the animal liable in damages").
For all the foregoing reasons, the defendant's vagueness claim fails because his conduct clearly came within the core of the activity prohibited by § 53-247 (a).[10]
*552 III
SUFFICIENCY OF THE EVIDENCE
The defendant finally claims that the evidence was insufficient to prove beyond a reasonable doubt that **35 he violated § 53-247 (a) and, therefore, that his conviction was improper.[11] We disagree.
In evaluating a claim of evidentiary insufficiency, we "review the evidence and construe it as favorably as possible with a view toward sustaining the conviction, and then ... determine whether, in light of the evidence, the trier of fact could reasonably have reached the conclusion it did reach." (Emphasis omitted; internal quotation marks omitted.) State v. Jordan , 314 Conn. 354, 385, 102 A.3d 1 (2014). A trier of fact is permitted to make reasonable conclusions by "draw[ing] whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. ... [These inferences, however] cannot be based on possibilities, surmise or conjecture." (Internal quotation marks omitted.) Id.
"We note that the [trier of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but]
**36 each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt." (Internal quotation marks omitted.) State v. Perkins , 271 Conn. 218, 246, 856 A.2d 917 (2004). "Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. ... It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) Id.
In the present case, the defendant challenges his conviction of cruelty to animals on the basis that there was insufficient evidence to prove beyond a reasonable doubt that he shot Wiggles with a BB gun. In order to sustain a conviction of cruelty to animals, the state must have presented evidence from which the trier of fact reasonably could have found, beyond a reasonable doubt, that the defendant "unjustifiably injur[ed] [an] animal" with the requisite general intent. General Statutes § 53-247 (a) ; see part I of this opinion.
*553 We conclude that the state satisfied that burden.
In particular, the defendant contends that none of the state's witnesses actually saw him shoot Wiggles, that the state failed to connect the BB that was found inside Wiggles with the BB gun owned by the defendant and that there was no proof that he owned that gun at the time Wiggles was injured.[12] The defendant's argument, however, fails to follow the test applicable to a sufficiency of the evidence claim. See State v. Jordan , supra, 314 Conn. at 385, 102 A.3d 1.
We begin our review with the evidence cited by the trial court in its bench ruling: "[T]he state introduced **37 evidence from [Hester] and [Leiner] that on June 15, 2012, [Leiner] brought her cat, Wiggles, to the animal hospital [where] [u]sing a radiograph [Hester] determined the cat had a metal object consistent with a BB lodged in the muscle. [Hester] treated the animal but did not remove the metal object. On cross-examination, [Hester] testified [that] he rarely sees animals shot by a BB gun."
The state also presented evidence that the defendant was observed with a BB gun about ten days before Wiggles was found injured. In this regard, the trial court found that "[Bombard] testified credibly that when he stepped from his car [after hearing three distinct sounds that he associated with the discharge of a BB gun], he saw an individual he recognized as the defendant with a BB [gun] in his hands walking like a hunter stalking prey. The defendant cocked the [gun] and then made eye contact with [Bombard]. When they made eye contact, the defendant slowly stepped backward until he was out [of] [Bombard's] sight." The animal control officer who investigated Leiner's complaint testified that "[t]he defendant admitted to [him] that he owned a BB gun and shot at the cats to scare them away, although he [claimed he] didn't mean to hurt them." On the basis of a "thorough examination of all of the evidence, both documentary and testimonial, the [trial court found] the credible evidence establishes [that] the state prove[d] the elements of the offense [of] cruelty to animals [pursuant to] § 53-247 (a) beyond a reasonable doubt ...."
This evidence, viewed as favorably as possible to sustaining the verdict, establishes that the defendant was seen with a BB gun in a shooting stance in his yard close to the time when Wiggles was injured, he admitted that he owned a BB gun and that he had used it to shoot at Leiner's cats, and one of those cats was injured by a BB gun, which, according to Hester, is a rare **38 occurrence. On the basis of this circumstantial evidence and the reasonable inferences drawn therefrom, the trial court reasonably could have concluded that the defendant intentionally shot Wiggles with his BB gun, resulting in the cat's injury.[13] Although the defendant points to his own testimony that he did not purchase the BB gun until a later date, the trial court, as the finder of fact, was free to discredit this assertion. Moreover, we defer to the trial court's credibility determination *554 of Bombard's testimony that he saw the defendant with a BB gun more than one week before Wiggles was shot. Thus, we conclude that the evidence presented was sufficient for the trial court to find the defendant guilty of cruelty to animals pursuant to § 53-247 (a).
The judgment is affirmed.
In this opinion the other justices concurred.

General Statutes § 53-247 (a) provides in relevant part: "Any person who overdrives, drives when overloaded, overworks, tortures, deprives of necessary sustenance, mutilates or cruelly beats or kills or unjustifiably injures any animal , or who, having impounded or confined any animal, fails to give such animal proper care or neglects to cage or restrain any such animal from doing injury to itself or to another animal or fails to supply any such animal with wholesome air, food and water, or unjustifiably administers any poisonous or noxious drug or substance to any domestic animal or unjustifiably exposes any such drug or substance, with intent that the same shall be taken by an animal, or causes it to be done, or, having charge or custody of any animal, inflicts cruelty upon it or fails to provide it with proper food, drink or protection from the weather or abandons it or carries it or causes it to be carried in a cruel manner, or fights with or baits, harasses or worries any animal for the purpose of making it perform for amusement, diversion or exhibition, shall, for a first offense, be fined not more than one thousand dollars or imprisoned not more than one year or both ...." (Emphasis added.) Since the events underlying this appeal, General Statutes § 53-247 (a) was the subject of several amendments that have no bearing on the issues presented herein. See, e.g., Public Acts 2012, No. 12-86 (amending statute to add penalty for subsequent offense). In the interest of simplicity, we refer to the current revision of the statute.

The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The defendant was charged by way of a long form information with two counts of cruelty to animals pursuant to § 53-247 (a). He was found not guilty of the first count, which alleged that he had injured another cat with a BB gun, but guilty of the second count.

Leiner testified that she lived on the first floor of a multifamily home and that her tenants lived on the second and third floors.

General Statutes § 53-247 (b) provides in relevant part: "Any person who maliciously and intentionally maims, mutilates, tortures, wounds or kills an animal [shall be guilty of a class C or D felony]. ..." (Emphasis added.)
General Statutes § 53-247 (c) provides: "Any person who knowingly (1) owns, possesses, keeps or trains an animal engaged in an exhibition of fighting for amusement or gain, (2) possesses, keeps or trains an animal with the intent that it be engaged in an exhibition of fighting for amusement or gain, (3) permits an act described in subdivision (1) or (2) of this subsection to take place on premises under his control, (4) acts as judge or spectator at an exhibition of animal fighting for amusement or gain, or (5) bets or wagers on the outcome of an exhibition of animal fighting for amusement or gain, shall be guilty of a class D felony." (Emphasis added.)
General Statutes § 53-247 (d) provides in relevant part: "Any person who intentionally injures any animal while such animal is in the performance of its duties under the supervision of a peace officer ... or intentionally injures a dog that is a member of a volunteer canine search and rescue team ... while such dog is in the performance of its duties under the supervision of the active individual member of such team, shall be guilty of a class D felony." (Emphasis added.)
General Statutes § 53-247 (e) provides in relevant part: "Any person who intentionally kills any animal while such animal is in the performance of its duties under the supervision of a peace officer ... or intentionally kills a dog that is a member of a volunteer canine search and rescue team ... while such dog is in the performance of its duties under the supervision of the active individual member of such team, shall be fined not more than ten thousand dollars or imprisoned not more than ten years, or both." (Emphasis added.)

We also reject the defendant's claim that the "legislators may have been unaware that the language of [§ 53-247 (b), enacted in 1996 separately from subsection (a) ] was somewhat duplicative of a portion of subsection (a), or they may have been uncertain themselves as to what constitutes a 'justifiable' injury to an animal." When the meaning of a statute is plain, we do not consider legislative intent. See State v. Pond , supra, 315 Conn. at 467, 108 A.3d 1083 (pursuant to § 1-2z, "[i]f ... the meaning of [the statute's] text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered" [internal quotation marks omitted] ).

In State v. Golding , supra, 213 Conn. at 239-40, 567 A.2d 823, this court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation ... exists and ... deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis omitted; footnote omitted.) Id. ; see In re Yasiel R. , 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of Golding ).

General Statutes § 53-203 provides in relevant part: "Any person who intentionally, negligently or carelessly discharges any firearm in such a manner as to be likely to cause bodily injury or death to persons or domestic animals ... shall be guilty of a class C misdemeanor." (Emphasis added.) Relatedly, the Penal Code defines " 'firearm' " broadly to include any weapon from which a shot may be discharged. General Statutes § 53a-3 (19).

General Statutes § 22-351 (a) provides in relevant part: "Any person ... who unlawfully kills or injures any companion animal, shall be fined not more than one thousand dollars or imprisoned not more than six months, or both. For a second offense, or for an offense involving more than one companion animal, any such person shall be guilty of a class E felony."

Because we conclude that the statutory language was not vague as applied to the defendant's conduct, we need not review the defendant's facial challenge to the statute. See State v. Wilchinski , 242 Conn. 211, 218, 700 A.2d 1 (1997) ("[o]ur analysis terminates once we determine that the statute, strictly construed, is not vague as applied to the defendant's conduct").

The defendant makes no claim that, because the trial court reserved ruling on his motion for a judgment of acquittal at the close of the state's evidence, it would be improper for this court to consider the evidence that he presented as part of determining whether the evidence was sufficient to support his conviction. See State v. Seeley , 326 Conn. 65, 67 n.3, 161 A.3d 1278 (2017) ("[W]hen a motion for [a judgment of acquittal] at the close of the state's evidence is denied, a defendant may not secure appellate review of the trial court's ruling without [forgoing] the right to put on evidence in his or her own behalf. The defendant's sole remedy is to remain silent and, if convicted, to seek reversal of the conviction because of insufficiency of the state's evidence. If the defendant elects to introduce evidence, the appellate review encompasses the evidence in toto." [Internal quotation marks omitted.] ); see also Practice Book § 42-41. Although the defendant did not renew his motion for a judgment of acquittal, regardless of whether his claim is unpreserved, "any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of Golding .... [Thus] we review an unpreserved sufficiency of the evidence claim as though it had been preserved." (Citation omitted; internal quotation marks omitted.) State v. Revels , 313 Conn. 762, 777, 99 A.3d 1130 (2014), cert. denied, --- U.S. ----, 135 S.Ct. 1451, 199 L.Ed.2d 404 (2015).

The defendant also contends that the evidence did not prove that he "possessed the necessary [specific intent] required for the offense." Because we already have concluded that the defendant's conviction required only a general intent, we need not address this argument. See part I of this opinion.

The defendant contends that it was "likely that there were other individuals in the vicinity who were unhappy with the presence of the cats." Regardless of whether this is true, the defendant, in essence, requests that this court make impermissible inferences "based on possibilities, surmise or conjecture" about unsupported and barely articulated alternative theories of Wiggles' injury. (Internal quotation marks omitted.) State v. Jordan , supra, 314 Conn. at 385, 102 A.3d 1. We decline to do so.