## A05A1947. ALLEN et al. v. THE STATE.
(628 SE2d 717)

SMITH, Presiding Judge.

Sabrina Allison Allen and Mason William Allen were indicted jointly on three counts of cruelty to children in the first degree, which alleged that they wilfully withheld food from their three minor children to the extent that the children's health was jeopardized. After the close of the State's evidence, the trial court granted the Allens' motion for a directed verdict on Counts 2 and 3 of the indictment, which addressed their treatment of the two older children, whose ages at the time were approximately five and three. The remaining count, which addressed the Allens' treatment of their youngest child (the victim), was sent to the jury, which found the Allens guilty. The Allens' motion for new trial was denied, and they appeal, raising three enumerations of error.

In their enumerations of error, the Allens contend that the trial court should have directed a verdict on Count 1 as well, and that the trial court erred in denying their motion for new trial because their trial counsel had a conflict of interest and provided ineffective assistance. We find no merit in any of the Allens' enumerations of error and affirm the judgment below.

Viewed to support the jury's verdict, the evidence presented at trial showed that although considered a full-term baby, the victim weighed four pounds ten ounces at birth and was small for his gestational age. The pediatrician who attended him at birth, Dr. Kulangara, was qualified as an expert in pediatrics and testified as both a fact witness and an expert. He testified that the victim was a "normal but . . . small infant." The victim gained some weight shortly after birth, and the pediatrician testified that at a few weeks old the victim was "looking good" and was "very healthy." Approximately one month after birth he was still gaining weight, but "there was a complaint of vomiting a lot." An upper G.I. series of X-rays revealed "a trace of gastro reflux," which is "fairly common," for which medication was prescribed. The victim's next visit to the pediatrician, at two months and twenty days, showed he was "doing well." His pediatrician did not see the victim again until approximately eight months later, when he was diagnosed with "severe failure to thrive" and had gained only three ounces since his last visit, eight months before.

The Polk County Department of Family and Children Services (DFACS) obtained a shelter order for all three children after an unannounced visit, during which the five-year-old girl was apparently supervising her nearly three-year-old brother and the victim, who was then ten months old. The father was at work and the mother

was sleeping after working at her job all night. The DFACS caseworker testified that when she first saw the victim, "he looked like he was almost dead. He was so skinny and so small, it took my breath away." When the mother was awakened, she informed the caseworker that her baby suffered from an acid reflux problem and could not keep his formula down, so she stopped feeding him formula. Instead, she fed him water, crackers, and baby food. The mother could not remember the last time the victim had been seen by a doctor.

Shortly thereafter, Dr. Kulangara admitted the victim to the hospital, in part because he knew about "some DFACS involvement." As several witnesses testified, the victim's appearance was startling. Dr. Kulangara testified that his diagnosis was "severe failure to thrive, probably due to nutritional deprivation." He testified that nutritional deprivation can result from a number of causes including failure to feed, but also "vomiting, diarrhea, . . . that's all nutrition deprivation." This doctor also testified that the victim's parents should have taken him to a doctor because had the victim's nutritional deprivation continued, it could "eventually lead to death." While in the hospital for three days, the victim showed a "consistent weight gain."

DFACS placed the victim in foster care. His foster mother stayed with him in the hospital, and he was discharged to her care. While the victim was in foster care, a different pediatrician, Dr. Howard, saw him. She prescribed no medications, and the victim's foster parents testified that they tried to just "hold him, love him," and feed him formula every three hours at first, like a newborn. He tolerated the formula quite well, and he thrived. At first, weekly doctor visits were required, and he gained approximately one pound a week. A photograph of him taken at his first birthday, two months after he was placed with his foster mother, depicts a happy, well-nourished child.

The victim never was on medication for reflux while in Dr. Howard's care, and he steadily gained weight. This pediatrician testified that the victim had "some developmental delays" attributable to his lack of both nourishment and stimulation and was "pretty significantly below" average in growth, for height, weight, and head circumference. Dr. Howard testified that she had never seen reflux so bad that it caused a condition like the victim's and that it was obvious that he had not eaten for a long time. In her opinion, there was never "any excuse for a child to be in that condition." In her opinion, reflux could not have caused the symptoms the child displayed when he was placed in foster care, because "there's just not that much reflux that you can have that's going to make you weigh at ten months what you weighed at two months. Because that would mean that you have kept absolutely nothing, nothing down."

1. The Allens contend the trial court erred in denying their motion for a directed verdict on Count 1, which charged them with cruelty to children in the first degree, in that they "did willfully deprive [the victim] of necessary sustenance to the extent that said child's health and well-being [were] jeopardized, in violation of OCGA § 16-5-70 (a)." The Allens maintain that the evidence presented at trial was purely circumstantial, and that the State therefore was required under OCGA § 24-4-6 to present evidence excluding every other reasonable hypothesis except their guilt. They argue that a reasonable explanation for the victim's condition existed other than their failure to feed him, namely the victim's inability to retain his food because of acid reflux. We do not agree.

First, the evidence presented was not entirely circumstantial. The two pediatricians who observed, examined, and treated the victim testified to what they saw, as did DFACS caseworkers, relatives, and the victim's foster mother.

Second, OCGA § 17-9-1 (a) provides in part that a verdict of acquittal may be directed when "there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or 'not guilty.'" Here, a conflict existed in the evidence: Dr. Kulangara testified that the victim's nutritional deprivation was not necessarily caused by the Allens' failure to feed him, but it also could have resulted from the child's acid reflux. Dr. Howard testified, however, that in her opinion no acid reflux condition could possibly have caused the severe malnutrition of the victim; and her testimony suggested that it was caused by the Allens' failure to feed him. A directed verdict was therefore inappropriate.

Third, the Allens argue that under OCGA § 16-5-70, cruelty to children in the first degree may be committed in two different ways: by wilfully depriving a child of "necessary sustenance to the extent that the child's health or well-being is jeopardized," as provided in subsection (a), or by maliciously causing a child "cruel or excessive physical or mental pain," as provided in subsection (b). Failing to provide necessary medical care can be a crime under subsection (b) if it causes the child "cruel or excessive physical or mental pain." It cannot, however, "constitute a denial of 'sustenance.'" *Howell v. State*, 180 Ga. App. 749, 751-752 (3) (350 SE2d 473) (1986). Relying on *Howell*, the Allens argue that even if the doctors' testimony showed that as parents they acted improperly in any way, it was not because they deprived him of sustenance, as alleged in the indictment, but because they failed to take their baby to the doctor to treat his condition. They argue that since this was not the crime alleged in the indictment, the trial court should have granted their motion for directed verdict.

This argument fails, however, because Dr. Howard testified that in her opinion, reflux could not have caused the degree of malnourishment she found in the victim, and that his extreme failure to thrive was caused by failure to feed him. Because the State presented evidence that the victim was not fed, the trial court did not err in denying the Allens' motion for a directed verdict of acquittal.

2. The Allens also contend that the trial court erred in denying their motion for new trial based upon the ground that their trial attorney failed to disclose a serious conflict of interest. The Allens allege that they learned after trial that their trial counsel had once been prosecuted for murder by the assistant district attorney who prosecuted this case. They maintain that this "conflict" should have been disclosed to them before trial, that it affected trial counsel's ability to try their case, and that it prejudiced their defense.

We note initially that to prevail on their claim, the Allens "must show an actual conflict of interest that adversely affected [their] attorney's performance. [Cit.]" *Turner v. State*, 273 Ga. 340, 342 (2) (a) (541 SE2d 641) (2001).

> Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest. Undivided loyalty is an essential element of the right to counsel. Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest.

(Citations and punctuation omitted.) *Sallie v. State*, 269 Ga. 446, 448 (2) (499 SE2d 897) (1998). When "counsel operates under an actual conflict of interest, counsel's loyalty may be divided so as to constitute the denial of effective assistance of counsel." *Howerton v. Danenberg*, 279 Ga. 861, 862 (1) (621 SE2d 738) (2005).

In *Howerton*, the Georgia Supreme Court held that a conflict of interest existed when counsel concurrently represented the defendant and the district attorney in different matters. Id. at 863 (1). The court stated that "[a] situation in which an attorney represents both the prosecutor and the defendant in a criminal proceeding necessarily involves divided loyalties and gives the defense attorney a personal interest in the way he conducts the defense, an interest independent of and in obvious conflict with, the defendant's interest in obtaining a judgment of acquittal." Id. at 864 (1). This is so because "the defense attorneys were subject to the encumbrance that the prosecutor might take umbrage at a vigorous defense of the defendant and dispense with the services of their firm." (Citation and punctuation omitted.) Id.

Here, there was no representation of both the defendant and the prosecutor, and no concurrence of trial counsel's involvement with them. The Allens' trial counsel was tried and acquitted of murder before he became an attorney. He testified at the hearing on the Allens' motion for new trial that he was not intimidated by the assistant district attorney and that his experience as a defendant did not affect his ability to represent the Allens in this trial. We have found no cases, and counsel have cited us to none, in which the facts are even similar to those in this case. Neither have we found any bar rule or ethical standard that was breached. As pointed out by the State, if the facts underlying the Allens' complaint constitute a conflict, no person accused of an offense, tried, and acquitted would ever be able to practice law. This would be patently unfair to accused persons who are innocent. We conclude, therefore, that trial counsel was not operating under a conflict of interest.

3. The Allens also assert that the trial court erred by denying their motion for new trial on the ground that their trial counsel provided ineffective assistance. We do not agree.

To establish ineffective assistance, the Allens were required to show that their trial counsel's performance was deficient and that his deficient performance prejudiced their defense to the extent that a reasonable probability exists that but for their counsel's deficiency the result of their trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). See *Deal v. State*, 241 Ga. App. 879, 881-882 (3) (528 SE2d 289) (2000). To make this showing, the Allens "must rebut by clear and convincing evidence the strong presumption that [their] attorney was effective. [Cit.]" *Jones v. State*, 279 Ga. 854, 855 (2) (622 SE2d 1) (2005).

The Allens make broad, sweeping allegations of ineffective assistance with only the barest of reference to the record to support them and no citation of authority. Moreover, their allegations are actually belied by the record. Perhaps most importantly, the trial court granted trial counsel's motion for a directed verdict of acquittal as to Counts 2 and 3 of the indictment.

Contrary to the Allens' allegations, the record shows that trial counsel did consult with the Allens by telephone and in person before trial, that he did engage in discovery, that he did obtain the victim's medical records, and that he did present through Dr. Kulangara the Allens' defense that reflux was the cause of their child's failure to thrive. Trial counsel testified at the hearing on the motion for new trial that in his opinion, Dr. Kulangara's testimony, if believed, would be enough to persuade the jury that his clients were not guilty. The Allens argue that the juvenile court, apparently by consent order, ruled that the Allens were not at fault in their child's failure to thrive and that trial counsel failed to use that ruling to their advantage.

Trial counsel testified that he was aware of the favorable aspects of the juvenile court ruling and had a copy of the order. But the judgment in a civil suit may not be admitted in a criminal action to prove any fact determined in the civil action. *Johnson v. State*, 231 Ga. App. 823, 824 (499 SE2d 145) (1998).

The Allens' vague allegation without any citation to the record that their trial counsel "failed to disclose possible jury tampering" is insufficient to show that their trial counsel performed deficiently. In their amended motion for new trial, the Allens alleged that their trial counsel "knew that the state[']s key witness, Dana Bailey of Polk DFCS, had lunch with several of her friends on the jury during trial, and never brought this to the Court's attention." At the hearing on the motion for new trial, however, Bailey testified that she did not have lunch, or even conversation, with any juror during the trial. In sum, the Allens have not shown either prong of the *Strickland* test. The trial court therefore did not err in denying their motion for new trial made on the ground that their trial counsel was ineffective.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED MARCH 17, 2006 — 

*David L. Smith*, for appellants.

*Donald N. Wilson, District Attorney, Charles D. Gafnea, Assistant District Attorney*, for appellee.