A07A1790. GARDNER v. THE STATE.
(657 SE2d 288)

MIKELL, Judge.

Billy Barton Gardner, Jr., was convicted of four counts of armed robbery by a Hall County jury and was sentenced to life in prison.[1] On appeal, Gardner raises 42 enumerations of error. Gardner's brief fails to comport with the rules of this Court in fatal ways. It does not "contain a succinct and accurate statement of the proceedings below and the material facts relevant to the appeal";[2] nor does it state "the method by which each enumeration of error was preserved for consideration" on appeal.[3] Furthermore, 41 of Gardner's enumerated

---

[1] Gardner was indicted in four separate incidents and the cases were consolidated for trial.

[2] Court of Appeals Rule 25 (a) (1).

[3] Id.

errors are not supported by citations to the record, citation of authority, or argument. Therefore, these errors are deemed abandoned pursuant to Court of Appeals Rule 25 (c) (2).[4]

In Gardner's remaining enumeration of error, he argues that the trial court erred when it failed to excuse his appointed trial counsel, Graham McKinnon, due to a conflict of interest created by a partner in McKinnon's office. In the 11 pages of Gardner's appellate brief that are dedicated to this alleged error, not once does Gardner cite to the record. Court of Appeals Rule 25 (c) (3) provides that each enumerated error must be supported in the brief by specific reference to the record or transcript. "As we have reiterated time and time again, this Court will not cull the record in search of error on behalf of a party."[5] Nevertheless, we exercise our discretion to review Gardner's remaining single enumeration of error on the merits.[6]

The record shows that Gardner was tried on four armed robbery counts for incidents occurring on March 14, 2001, June 22, 2001, August 15, 2001, and August 17, 2001. Gardner was charged jointly with Jeremy Yopp in the indictments arising out of the August incidents. According to Gardner, the state provided discovery to McKinnon indicating that Jimmy Wheeler was with Gardner after the March 14 robbery, and that he and Wheeler had been listed as suspects in several armed robberies occurring in June 2002. Several days before trial, Gardner reviewed additional discovery and realized that McKinnon's law partner, Robert Chandler, had been appointed to represent Wheeler in a case involving several counts of armed robbery and theft by taking. McKinnon then filed a notice of conflict of interest, indicating essentially that because Gardner's interests would conflict with Wheeler's and both defendants were being represented by partners in the same firm, that a conflict had been discovered.

The court held a hearing on the notice of conflict on November 1, 2002, which was attended by McKinnon and Chandler. The court removed Chandler as counsel for Wheeler and appointed another attorney to represent him. After ensuring that McKinnon would not have an opportunity to look at Wheeler's file before Chandler could get it to the newly appointed attorney, the court addressed the issues raised in the notice of conflict of interest. McKinnon argued that it would be his position at trial that Wheeler committed at least one of the crimes for which Gardner was charged. The court asked Gardner

[4] Court of Appeals Rule 25 (c) (2). *Slmbey v. State*, 288 Ga. App. 717 (655 SE2d 223) (2007); *Hudson v. State*, 246 Ga. App. 335 (1) (539 SE2d 860) (2000).

[5] (Citation, punctuation and footnote omitted.) *Arnold v. State*, 262 Ga. App. 61 (1) (584 SE2d 662) (2003).

[6] See id.; *Powles v. State*, 248 Ga. App. 4 (545 SE2d 153) (2001).

if he still wanted McKinnon to represent him in spite of these facts, and Gardner indicated that he did. The court concluded that no conflict of interest existed but nonetheless instructed Gardner to consult with his other appointed attorney, Mike Weaver, over the following weekend along with McKinnon. The court informed Gardner that it would revisit the issue on Monday morning before the start of trial, inquiring into Gardner's desire to waive any potential conflict that might arise. Gardner informed the court that he wanted McKinnon on his case but did not want him to risk being disbarred and that he thought the person who really needed to waive the conflict was Wheeler.

When court resumed that following Monday morning, McKinnon represented that Gardner and Weaver had discussed the issue out of his presence and that all three of them had discussed it together. Gardner then answered on the record that he still wanted McKinnon to represent him; that he had discussed the issue thoroughly with McKinnon and with Weaver; that he "absolutely" wanted McKinnon to continue to represent him; that he was waiving Canon of Ethics Rule 1.7,[7] which the court read in open court; that he had consulted with McKinnon and Weaver pursuant to Rule 1.7; that he understood the rule and discussed it in detail with both lawyers; and that he was "absolutely" consenting to McKinnon's continued representation of him. The court found that there was no evidence or statement from counsel or Gardner that would lead it to conclude that there was a significant risk that the representation of Gardner would be adversely affected by Chandler's representation of Wheeler, and that for purposes of argument, it could concede that Wheeler was the individual who would have the actual conflict. The court then found as a matter of fact that Gardner had waived any conflict of interest freely, voluntarily, and intelligently, and Gardner agreed.

---

[7] The court read as follows:
> A lawyer shall not represent or continue to represent a client if there's a significant risk that the lawyer's own interest or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client, except as permitted in subsection (b). Subsection (b) says, if client consent is permissible a lawyer may represent a client notwithstanding a significant risk of material and adverse effect if each affected or former client consents, preferably in writing, to the representation after, one, consultation with a lawyer . . . [t]wo, having received in writing reasonable and adequate information about the material risk of the representation . . . [and three,] [h]aving been given the opportunity to consult with independent counsel.

The court's recitation of the rule comports with that stated in the Georgia Rules of Professional Conduct.

On appeal, Gardner "must show an actual conflict of interest that adversely affected [his] attorney's performance."[8] However, Gardner has not carried his burden.

> Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest. Undivided loyalty is an essential element of the right to counsel. Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest. When counsel operates under an actual conflict of interest, counsel's loyalty may be divided so as to constitute the denial of effective assistance of counsel.[9]

Had McKinnon indicated that he would be prohibited from presenting the strongest defense for Gardner, the result here would be different. Instead, McKinnon expressly informed the court that his defense as to one of the charges would be that Wheeler committed the crime and during closing argument, he did in fact argue that Wheeler was responsible. Therefore, we find that there was no conflict of interest that adversely affected the representation that Gardner received. Moreover,

> [w]here [a] defendant[ ] state[s] on the record that [he has] discussed the case with counsel, that there is no conflict of interest and that [he is] satisfied to proceed . . . , any error was induced by the defendant[']s statements, and induced error is impermissible. A party can not during the trial ignore what he thinks to be an injustice, take a chance on a favorable verdict, and complain later.[10]

Accordingly, we affirm the judgment of the trial court.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JANUARY 29, 2008.

---

[8] (Punctuation omitted.) *Allen v. State*, 278 Ga. App. 292, 295 (2) (628 SE2d 717) (2006), citing *Turner v. State*, 273 Ga. 340, 342 (2) (a) (541 SE2d 641) (2001). See generally *Fogarty v. State*, 270 Ga. 609, 610-611 (513 SE2d 493) (1999) (defendant must show that counsel actively represented conflicting interests and active conflicts of interest adversely affected lawyer's performance).

[9] (Citations and punctuation omitted.) *Allen*, supra.

[10] *Miller v. State*, 271 Ga. App. 524, 525 (2) (610 SE2d 156) (2005), citing *Brumelow v. State*, 239 Ga. App. 119, 123 (6) (520 SE2d 776) (1999).

*David Burroughs*, for appellant.

*Lee Darragh, District Attorney, Jennifer C. Bagwell, Assistant District Attorney*, for appellee.