**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**August 22, 2025**

# In the Court of Appeals of Georgia

A25A1217. WARD v. THE STATE.

GOBEIL, Judge.

A Colquitt County jury found Jerry Maxwell Ward guilty of theft by conversion. Ward now appeals, arguing that (1) the trial court erred by failing to grant his motion for a directed verdict as there was insufficient evidence to (a) support piercing the corporate veil; (b) show that Ward intended to defraud the victims; and (c) show that Ward converted the funds to his own use. Ward also asserts that the trial court erred in (2) allowing evidence of other crimes, wrongs, or acts under OCGA § 24-4-404 (b); (3) denying Ward's pretrial motion to dismiss; (4) failing to grant Ward's motion in arrest of judgment; and (5) sentencing Ward to a debtor's prison. For the reasons that follow, we now affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Hall v. State*, 335 Ga. App. 895, 895 (783 SE2d 400) (2016) (citation and punctuation omitted). So viewed, the record shows that Ward is the President of Quality Companies, Inc., which was organized as an S-corporation and operated a pool construction division, Quality Pool and Patio ("Quality Pool"). On December 31, 2021, Jared and Lori Long met with a company salesperson, Ken Perry, and signed a contract with Quality Pool for the construction of a pool. Jared Long wrote a check for $14,700 to Quality Pool as a deposit and was told to expect a four to six month wait time before construction would begin on the pool.[1] At some point, the Longs received a concept drawing and a sketch of the final layout of the pool from a designer. Ward sent a form letter[2] informing his clients, including the Longs, that the business was

---

[1] The contract listed the final cost of the Longs's pool as $49,190.

[2] The letter was undated.

experiencing severe financial issues and that "the current prices under contract no longer cover the costs of the pool installation." In June 2022, Quality Pool unsuccessfully sought additional funding from Farmers and Merchant Bank in order to complete its existing projects. The Bank froze Quality Pool's accounts, foreclosed on its real estate, and repossessed the company's equipment. Quality Pool terminated certain employees on June 16, 2022, and the remaining employees quit because the company could not pay them. In July 2022, Ward informed the Longs via text message that he would be unable to start building their pool because his business was struggling. At that point, Jared Long inquired about getting his deposit back, but he never heard back from Ward. Ward filed for Chapter 7 bankruptcy on July 22, 2022. Ward listed both his personal and corporate debt on the bankruptcy petition, including the amount he owed the Longs.

In July 2022, the Longs filed a civil suit against Quality Pool in the Magistrate Court of Lowndes County, alleging breach of contract. The Longs were unable to complete service of process upon Quality Pool because the company had gone out of business and was no longer at its physical address. In late August 2022, Lori Long contacted law enforcement in Colquitt County upon learning from social media that

Quality Pool had several customers throughout South Georgia with pools that were never built or left unfinished after the company went out of business. Lori Long made a report with the Colquitt County Sheriff's Office and the matter was assigned to Investigator Austin Cannon. Cannon collected copies of the Longs's contract with Quality Pool, the deposit check, and a drawing of the proposed pool, and later issued a warrant against Ward. Thereafter, Ward was charged by an amended accusation with a single count of theft by conversion pursuant to OCGA § 16-8-4 for "having lawfully obtained funds" in the amount of $14,700 from the Longs as a down payment under an agreement to construct a pool, and then "knowingly convert[ing] said funds to his own use[.]"

Ward filed a pre-trial motion to dismiss the accusation, arguing that there was no evidence that he converted the $14,700 deposit paid by the Longs to his personal use or that he had an intent to defraud. He maintained that at best, the Longs's allegation amounted to a claim for breach of contract. Following a hearing, the trial court denied the motion on February 9, 2024. Ward filed a motion for reconsideration of the denial of his motion to dismiss. In support, Ward highlighted that the United States Bankruptcy Court for the Middle District of Georgia had issued an order dated

4

February 13, 2024, finding that the plaintiffs (who were all clients who had contracted with Quality Pool to build pools) had failed to show that Ward made false representations, converted the funds to Ward's own use, or to meet the required burden of proof to pierce the corporate veil and Ward's debts were dischargeable, as the clients' losses were attributable to market forces caused by the substantial increases in labor and material costs. The record does not contain a ruling on Ward's motion for reconsideration, but in his appellate brief, Ward represents that the trial court denied the motion in an e-mail to the parties.

The State filed a notice of its intent to present other acts evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)") to prove, among other things, intent, motive, identity, and lack of accident or mistake. Following a hearing, the trial court orally granted the motion to admit the Rule 404 (b) evidence.[3] At trial, the State presented five other acts witnesses. Jason Bishop testified that he met with Perry in October 2021 and signed a contract for Quality Pool to build him a pool. Bishop paid the company a $21,000 deposit, and the check was deposited in Quality Pool's account

---

[3] The record does not contain a written order on the trial court's ruling regarding the admission of the Rule 404 (b) evidence. In his appellate brief, Ward states that the court sent its ruling in an e-mail on February 23, 2024.

within two weeks of Bishop signing the contract. In the summer of 2022, Perry called Bishop and informed him that he (Perry) was no longer with Quality Pool, and the pool that Bishop had contracted for likely would not get built. Work never started on the pool and Bishop never received his deposit back.

Mark Dixon testified that he and his wife signed a contract with Quality Pool in January 2022 for construction of a pool and gave Ward a check for $15,000 for a deposit. The Dixons paid Quality Pool an additional $22,500 in May 2022 to start excavation. The company dug a hole, poured some concrete, and did some basic plumbing, but Quality Pool never finished the pool, and the Dixons had to pay another company to complete construction. Dixon testified that the concrete contractor filed a lien on his property because Quality Pool never paid for the concrete, and the Dixons had to pay an additional $5,400 to have the lien removed. Dixon was never refunded any of the money he paid to Quality Pool to have his pool built.

Melissa Hardy testified that in March 2022, she met with Ward and signed a contract with Quality Pool for the construction of a pool. She wrote a check for $24,000 for a deposit. Quality Pool never did any work on her pool, and Hardy later

received the same form letter as the Longs in which Ward explained that Quality Pool was experiencing financial problems. Hardy never received her money back.

Christopher Davis testified that he met with Perry and hired Quality Pool in August 2021 to build a pool at his home. He initially wrote a check for $30,000 for the deposit and then wrote additional checks totaling $73,000 for excavation and concrete. Davis later received notice of liens from two separate concrete companies, which he paid himself. Ward asked Davis for more money due to the rising cost of materials, but Davis refused this request. Davis went to Quality Pool's business location, but the business was padlocked.

Steven Newell met with Ward in March 2022 and signed a contract to have Quality Pool build a pool at his house and paid a deposit for $12,900. He only received a rough sketch of a pool and when he demanded repayment of his deposit, Ward informed him that the money had been used for something else for the company.

At the close of the State's evidence, Ward moved for a directed verdict, arguing there was no evidence that Ward intended to defraud the Longs or any of the other clients who contracted with Quality Pool to build a pool; or that Ward appropriated the money paid by his clients for his own personal use. Ward also contended that the

State had failed to pierce the corporate veil to render him personally responsible for the company's actions. The court reserved its ruling until the close of all evidence.

The defense called Eric Tillman, a certified public accountant, who prepared Quality Companies' taxes. Tillman testified that Quality Companies experienced a net loss of $447,000 for 2021, which stemmed from operating expenses and interest expenses from some of the company's loans. Tillman testified that he never saw any irregularities or evidence of fraud in the company's bookkeeping. Tillman also noted that he never saw any evidence of commingling between company assets and Ward's personal expenses. Tillman explained that Ward was the sole shareholder of Quality Companies and because the company was taxed as an S-corporation, "the profits and losses from the company flow[ed] through him." Ward reported the company's losses on his personal tax return.

Ronnie Chauncey, President of Farmers and Merchant Bank, testified that Ward maintained separate accounts for his business and personal use at the bank. Tom Lovett, an attorney who filed Ward's personal bankruptcy petition, testified that it is common practice to list the corporate debt in an individual owner's bankruptcy petition, regardless of that person's ownership stake. "The reason for that is, if there

could be a claim that a creditor or some other person may have against the individual, you want that person to receive notice that the individual person has filed a Chapter 7 case. . . . It's not an admission in any way that the individual owes the corporate debt." Lovett listed all the creditors of Quality Pool on Ward's petition, including unsecured creditors such as the company clients, including the Longs.

The jury found Ward guilty as charged. Ward renewed his motion for a directed verdict, arguing that there was no evidence to pierce the corporate veil, to show that he had an intent to defraud, or that he converted company funds for his personal use. Ward also filed a motion in arrest of judgment, arguing that the accusation failed to allege an essential element of the crime of conversion, namely, an intent to defraud. The trial court denied both motions. The court sentenced Ward to ten years with the first six years to be served in confinement and the remainder on probation. The instant appeal followed.

1. In his first three enumerations of error, Ward argues that the trial court erred in denying his motion for a directed verdict of acquittal. "The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing

9

the sufficiency of the evidence to support a conviction." *Crawford v. State*, 301 Ga. App. 633, 635 (1) (688 SE2d 409) (2009) (citation and punctuation omitted).

> Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve.

*Bollinger v. State*, 259 Ga. App. 102, 102 (1) (576 SE2d 80) (2003) (citation and punctuation omitted).

In related claims of error, Ward alleges that the trial court failed to direct a verdict in his favor with respect to his conviction for theft by conversion as (a) there was insufficient evidence of an abuse of the corporate form through commingling of Quality Pool's funds with Ward's personal accounts to support piercing the corporate veil; (b) to show that he intended to defraud the Longs; or (c) to show that he converted the money received from the Longs for personal use. Ward alleges that the State improperly presented a "business failure and breach of contract [as] a crime by the president of [Quality Pool]." Based on the evidence presented at trial, we have no basis to disturb the jury's verdict.

Pursuant to OCGA § 16-8-4 (a):

A person commits the offense of theft by conversion when, having lawfully obtained funds or other property of another including, but not limited to, leased or rented personal property, under an agreement or other known legal obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds or property to his own use in violation of the agreement or legal obligation. This Code section applies whether the application or disposition is to be made from the funds or property of another or from the accused's own funds or property in equivalent amount when the agreement contemplates that the accused may deal with the funds or property of another as his own.

Nevertheless, it is an affirmative defense to theft by conversion if the defendant establishes that he "[a]cted under an honest claim of right to the property or service involved [or a]cted under a right to acquire or dispose of the property as he or she did[.]" OCGA § 16-8-10 (2)-(3). In other words, "the theft by conversion statute requires more than proof of a failure to comply with any contractual obligation. It requires proof of criminal intent — the knowing appropriation of funds or property belonging to another." *Combs v. State*, 370 Ga. App. 709, 712 (1) (898 SE2d 878) (2024) (citation and punctuation omitted). "It is the presence of a fraudulent intent that distinguishes theft by conversion from a simple breach of contract." *Barrett v.*

11

*State*, 207 Ga. App. 370, 370 (427 SE2d 845) (1993) (citation and punctuation omitted). "The statute cannot properly be employed in the enforcement of civil contract rights; otherwise, we risk violating the constitutional prohibition against imprisonment for debt." *Combs*, 370 Ga. App. at 712 (1) (citation and punctuation omitted).

(a) Ward asserts that the State failed to pierce the corporate veil in order to hold him personally responsible for the acts of Quality Pool. "The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." *TMX Finance, LLC v. Goldsmith*, 352 Ga. App. 190, 210 (6) (833 SE2d 317) (2019) (citation and punctuation omitted). "The doctrine of piercing the corporate veil is generally used for the purpose of piercing the corporate veil to hold an individual stockholder liable for debts incurred by the corporation." Id. (citation and punctuation omitted). Ward cites to numerous cases in the civil context in support of his argument,[4] but he fails to

---

[4] See, e.g., *G&E Constr., LLC v. Rubicon Constr., Inc.*, 357 Ga. App. 55, 58 (3) (849 SE2d 785) (2020) (sole ownership of a corporation and the fact that sole owner uses and controls it to promote his ends are not factors to be considered when determining whether to pierce the corporate veil).

show that the doctrine of piercing the corporate veil is applicable to shield him from liability in the criminal context. See *McMahon v. State*, 258 Ga. App. 512, 515 (1) (574 SE2d 548) (2002) ("an officer or agent of a corporation cannot assert that criminal acts, in the form of corporate acts, were not his acts merely because carried out by him through the instrumentality of the corporation which he controlled and dominated in all respects and which he employed for that purpose") (citation and punctuation omitted).

(b) Ward counters that there is no indication that he intended to defraud the Longs (or any of his other clients) and Quality Pool was drastically affected by market forces, including the rising cost of materials, as a consequence of the economic impact of the COVID-19 pandemic. He highlights that he unsuccessfully sought to obtain additional loans from banks in order to finish his existing construction projects, and the bank then froze his assets, foreclosed on the company's property, and repossessed his equipment.

> The question of intent is peculiarly a question of fact for determination by the jury, which may infer a defendant's intent from the evidence presented at trial. The jury may find the requisite intent upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act. Further, the jury is authorized to

discredit the defendant's statements about his motivations and find, instead, that the defendant possessed the requisite criminal intent. Where the jury finds the requisite intent, that finding will not be reversed on appeal provided there is some evidence supporting the jury's inference.

*Johnson v. State*, 367 Ga. App. 344, 347 (1) (a) (i) (886 SE2d 5) (2023) (citations and punctuation omitted). Here, the State provided evidence that Ward continued to solicit business (and accept payment) from clients in the months and weeks before filing bankruptcy, even as his business was losing money and he was unable to meet his existing contractual obligations, authorizing the jury to find that he was accepting money from the victims with intent to use that money for purposes other than the promised outcome. The State's evidence included testimony from other clients that had contracted with Quality Pool and paid deposits for pools that were only partially finished or never started and the clients were unable to reach Ward when they requested their money back. Instead, the deposits were used to service the company's existing debt. Under these circumstances, the jury was authorized to infer that Ward acted with fraudulent intent and to find him guilty of theft by conversion. See *Cox v. State*, 275 Ga. App. 895, 895-896 (622 SE2d 11) (2005) (evidence was sufficient to

14

authorize jury to infer that defendant fraudulently converted money for his own use where he received the money, he failed to use it for the specified purpose, and failed to return the victim's telephone calls).

(c) There is no question that the Longs paid Quality Pool (which was owned by Ward) a $14,700 deposit to construct a pool. And from the State's evidence, it appears without contradiction that Ward did not use that money for the specified purpose, i.e., to build the Longs a pool. The jury was authorized to infer that Ward used the funds to pay either his personal expenses or his company's expenses on unrelated matters. Ward's assertion that the State failed to prove that he converted the funds to his own personal use is misplaced. OCGA § 16-8-4 (a) defines the offense of conversion as a person's knowingly converting the funds "to his own use in violation of the agreement[.]" "His own use" does not refer exclusively to using the funds for unapproved personal expenses; rather, it refers to using the funds for a chosen use other than the purpose specified in the agreement. See *Cox*, 275 Ga. App. at 895. Indeed, in *Connally v. State*, 265 Ga. 563, 564 (2) (458 SE2d 336) (1995), our Supreme Court held that using a portion of the funds received from the victims to pay unapproved expenses of a business partnership in which the defendant was involved

met the definition of using the funds for the defendant's own use. Cf. *McMahon*, 258 Ga. App. at 515 (1) (defendant liable for criminal acts carried out as an officer of the corporation he controlled). Based on the foregoing, we conclude that the trial court did not err in denying Ward's motion for a directed verdict.

2. In his next two enumerations of error, Ward argues that the trial court erred by allowing other acts evidence under Rule 404 (b). Pursuant to that rule, "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith." OCGA § 24-4-404 (b). But such other acts evidence may be admissible for other purposes, including to prove intent. Id. Nevertheless, under Rule 403, even relevant evidence offered for a proper purpose may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" OCGA § 24-4-403. To determine the admissibility of other acts evidence under the aforementioned rules, courts employ a three-pronged test. See *Hounkpatin v. State*, 313 Ga. 789, 794 (2) (873 SE2d 201) (2022). Under that test, when the State seeks the admission of other acts evidence, it must show that

> (1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by the danger of unfair prejudice as required by Rule 403,

16

and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act.

*Jones v. State*, 301 Ga. 544, 545 (802 SE2d 234) (2017). We review a trial court's decision to admit other acts evidence under this test for an abuse of discretion. *Heard v. State*, 309 Ga. 76, 85 (3) (b) (844 SE2d 791) (2020).

(a) Ward asserts that there is no evidence to show that he intended to defraud any of the other clients. He also alleges that the trial court failed to properly apply the balancing test of weighing the prejudicial impact of the evidence versus the probative value. We find no error.

With regard to intent, "a defendant puts his intent in issue when he pleads not guilty unless he takes affirmative steps to withdraw intent as an element to be proved by the State." *State v. Jones*, 297 Ga. 156, 161 (2) n. 4 (773 SE2d 170) (2015).

Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404(b) test is satisfied.

*Bradshaw v. State*, 296 Ga. 650, 657 (3) (769 SE2d 892) (2015) (citations and punctuation omitted). Because Ward pleaded not guilty to the charged offense and did not take any affirmative steps to withdraw his intent as an element that had to be proven by the State, he placed his intent at issue in the present case. See *Hargrove v. State*, 361 Ga. App. 106, 113 (2) (c) (i) (863 SE2d 364) (2021). Each of the Rule 404 (b) witnesses testified at trial that during a period spanning six to nine months before Quality Pool went out of business in the summer of 2022, he or she paid a deposit to Quality Pool and Ward for construction of a pool, but that construction either never started or was incomplete and no money was ever returned. The witnesses all testified that Ward stop communicating with them when they demanded the return of their deposits. This evidence was relevant to prove the State's narrative that Ward was operating a scheme to defraud clients in order to service his existing debts and keep his business afloat. See *Harris v. State*, 314 Ga. 238, 262 (3) (a) (875 SE2d 659) (2022) ("The test for relevance is generally a liberal one, and relevance is a binary concept — evidence is relevant or it is not[.]" (citations and punctuation omitted.)

Nevertheless, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

18

misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. "[T]here is no mechanical solution for this balancing test," and "a trial court must undertake in each case a considered evaluation of the proffered justification for the admission of such evidence and make an independent determination[.]" *Jones*, 297 Ga. at 163 (3). "[I]n reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Anglin v. State*, 302 Ga. 333, 337 (3) (806 SE2d 573) (2017) (citation and punctuation omitted). Because the evidence about Ward's pattern of signing up clients, requiring payment of large deposits, and then failing to fulfill his contractual obligation was integral to the narrative surrounding his crime, its probative value was not substantially outweighed by the risk of undue prejudice. See generally *Old Chief v. United States*, 519 U. S. 172, 183 (II) (B) (1) (117 SCt 644, 136 LE2d 574) (1997) (recognizing, in weighing the probative value versus prejudice of evidence offered under Rule 404 (b), "the offering party's need for evidentiary richness and narrative integrity in presenting a case"). Additionally, the trial court minimized the risk of undue prejudice by giving the jury a limiting instruction on the use of this evidence

prior to the admission of the testimony from the other clients, and again during the jury charge after the close of the evidence. See *Lofland v. State*, 357 Ga. App. 92, 97 (1) (a) (850 SE2d 175) (2020).

Ward has cited nothing in the record in support of his assertion that the trial judge did not apply the requisite three-part test for admitting the other acts evidence. "The trial judge is presumed to know the law and presumed to faithfully and lawfully perform the duties devolving upon [him] by law. This court will not presume the trial court committed error where that fact does not affirmatively appear." *Harrison v. State*, 330 Ga. App. 570, 572 (1) (768 SE2d 762) (2015) (citation and punctuation omitted). See also *Holmes v. State*, 311 Ga. 698, 706 (3) (859 SE2d 475) (2021) ("Trial judges . . . are presumed to know the law and apply it in making their decisions, absent some indication in the record suggesting otherwise.") (citation and punctuation omitted).

To the extent that Ward argues that the trial court erred in failing to explain on the record how it determined the admissibility of the prior acts evidence, he "did not object to the failure to make Rule 403 and Rule 404 findings on the record, and such

a failure was not plain error."[5] *Branch v. State*, 361 Ga. App. 86, 90 (4) (863 SE2d 349) (2021) (no requirement for on-the-record findings in support of admission of evidence under the three prongs of Rule 404 (b), so no plain error where court failed to make such findings on the record) (citation and punctuation omitted).

(b) Ward contends that the trial court erred in preventing him from cross-examining Rule 404 (b) witnesses with respect to the order entered in his bankruptcy case to show that he was discharged of all of his debts in federal court. We discern no error.

During the hearing on the State's Rule 404 (b) motion, the court took judicial notice of the existence of the bankruptcy proceeding. Ward then asked the court to further take notice of the bankruptcy court's specific findings. The court reserved its ruling, and after further discussion, the court ultimately denied Ward's request. Ward argues the trial court erred in preventing him from cross-examining the Rule 404 (b) witnesses about the bankruptcy court's finding that Ward's debts were dischargeable

---

[5] To establish plain error on these evidentiary rulings, an appellant must show that the error alleged was not affirmatively waived; was obvious and not subject to reasonable dispute; probably affected the outcome of the trial; and seriously affected the fairness, integrity, or public reputation of judicial proceedings. See *Gates v. State*, 298 Ga. 324, 327-328 (3) (781 SE2d 772) (2016).

and the pool clients had failed to meet the lower burden of a preponderance of the evidence standard to show that Ward made false representations, converted the funds to Ward's own use, or to pierce the corporate veil. The bankruptcy court was adjudicating whether Ward's debts were dischargeable, while the jury in the instant trial was weighing a criminal charge against Ward. Because of the different standards of proof, the "judgment in a civil action is not admissible in a criminal action to prove any fact determined in the civil action." *Flynt v. State*, 153 Ga. App. 232, 243 (III) (d) (264 SE2d 669) (1980) (citation and punctuation omitted); *Allen v. State*, 278 Ga. App. 292, 297 (3) (628 SE2d 717) (2006). And, as previously outlined in Division 1, the question of intent is to be exclusively determined by a jury based upon the evidence presented. *Johnson*, 367 Ga. App. at 347 (1) (a) (i). As a result, this claim of error fails.

3. Ward alleges that the trial court erred in denying his motion to dismiss the accusation as there was no evidence of fraudulent intent on his part or that he converted any funds to his own use. For the reasons previously outlined in Division 1, the trial court did not err in denying the motion to dismiss as there was sufficient evidence for the case to proceed to the jury.

22

4. Ward argues that the trial court erred in failing to grant his motion in arrest of judgment as the accusation did not include language about an intent to defraud, which is a material element of the offense of theft by conversion.

"(A) general demurrer challenging the validity of the indictment may be raised at any time, but not in any proceeding." *Jones v. State*, 290 Ga. App. 490, 493 (1) (659 SE2d 875) (2008) (citation and punctuation omitted). A post-conviction challenge to the validity of an indictment must be raised in a motion in arrest of judgment. Id. As this Court has stated,

> [a]fter a defendant has been convicted under the indictment and judgment has been entered on the conviction, the indictment may be challenged in a motion in arrest of judgment, which asserts that the indictment contains a defect on its face affecting the substance and real merits of the offense charged and voiding the indictment, such as failure to charge a necessary element of a crime.

Id. (citation and punctuation omitted).

Ward was initially charged by accusation with one count of theft by conversion for having lawfully obtained $14,700 from Lori Long under an agreement to construct a pool and then knowingly converting said funds to his own use in violation of the contract. After the State rested, Ward moved for a directed verdict for multiple

23

reasons, including as relevant here that the indictment contained a fatal variance as the accusation only named Lori Long as a victim and the State had failed to meet its burden to show that Ward converted Lori Long's money. The court reserved its ruling at that time. At the close of the evidence, the court found that there was a fatal variance in the accusation with respect to the identity of the victims and source of the money, and the court therefore granted the motion for directed verdict and dismissed the case. The State suggested that it could modify the accusation by adding Jared Long. After conferring with Ward, defense counsel agreed to a modification to the accusation to include both Jared and Lori Long as victims and to permit the case to proceed to a verdict. After the State amended the accusation to include both names, defense counsel indicated that she was fine with the language change, and the amended accusation was filed with the court. The court later explained the change to the jury, and the charging document went out with the jury during deliberations.

The language in the amended accusation tracked the language in the theft by conversion statute, OCGA § 16-8-4 (a) — that Ward "knowingly converted" funds obtained lawfully under the terms of a contract between the parties. And although Ward is correct that in order to prove theft by conversion, the State must show that

24

he acted with fraudulent intent, there is no requirement that those words have to appear in the accusation and in fact, OCGA § 16-8-4 (a) does not contain the phrase "fraudulent intent." As Ward concedes, the trial court properly charged the jury that "[t]o prove theft by conversion, the State must show that the defendant acted with fraudulent intent." As a result, this claim is without merit. See *Kaufman v. State*, 344 Ga. App. 347, 352-354 (2) (810 SE2d 585) (2018) (affirming trial court's denial of defendant's post-verdict motion in arrest of judgment because accusation was sufficient to put defendant on notice of the crimes with which he was charged and he could not admit the facts as alleged and still be innocent of committing a crime).

5. Finally, Ward alleges that the trial court erred in sentencing him to a debtor's prison. He maintains that a custodial sentence of six years based upon acts that amount to no more than a breach of contract without any proof of an intent to defraud or conversion of funds to his personal use is unconstitutional. As previously discussed in Division 1, there was sufficient evidence to sustain Ward's conviction for theft by conversion, and therefore, his actions amounted to criminal conduct and not a mere breach of contract. The Supreme Court of Georgia has recognized a distinction between imprisonment for debt and imprisonment for criminal behavior. See

25

*Connally*, 265 Ga. at 563 (1) (Georgia Constitution does not forbid imprisonment for criminal conduct, even though the criminal conduct also results in a civil debt because theft by conversion also requires proof of criminal intent).

Pursuant to OCGA § 16-8-12 (a) (1) (B), because the value of the converted funds ($14,700) was greater than $5,000, but less than $25,000, the court was authorized to sentence Ward to a term of imprisonment ranging from one to ten years.[6] The trial court sentenced Ward to the maximum statutory sentence of ten years with the first six years to serve in confinement and the remainder on probation. The court imposed a legally authorized sentence, and we therefore have no basis to disturb Ward's sentence.

Based on the foregoing, we affirm Ward's conviction and sentence.

*Judgment affirmed. Rickman, P. J., and Davis, J., concur.*

---

[6] The trial court also had the discretion to impose a misdemeanor sentence. See OCGA § 16-8-12 (a) (1) (B).